[No. F017517. Fifth Dist. July 12, 1994.]

LINDA MURRAY, Plaintiff and Respondent, v.
ROBERT A. MURRAY et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I. B through I. H and II of Discussion.

**COUNSEL**

Robert A. Murray and Carol Ann Murray, in pro. per., and Michael D. Stokes for Defendants and Appellants.

Dowling, Magarian, Phillips & Aaron, Dowling, Magarian, Aaron & Heyman and Francine M. Kanne for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.**—Following a jury trial, respondent Linda Murray obtained judgment against her adoptive father, Robert Athanasius Murray and his wife, Carol Ann Slater Murray.[1] The judgment quieted Linda's title to a certain parcel of real property, awarded her damages of $60 each against Robert and Carol, and awarded her an additional $70,000 against Carol alone for attorney fees incurred in the action. Robert and Carol appeal, raising a multitude of issues. We will conclude that the award for attorney fees is not legally sustainable but that in all other respects the judgment was proper. We will modify the judgment accordingly.

### FACTUAL AND PROCEDURAL BACKGROUND

Linda's mother, Dianto Chomette, married Robert Murray in 1969 and in 1972 or 1973, Robert adopted Dianto's four daughters, including Linda.

---

[1]Because all the parties share the same last name, we will refer to them by their first names. We mean no disrespect by doing so.

In 1974, the family was in the process of constructing a house on a lot in the Squaw Valley area of Fresno County at 37049 Totem Lane. The lot had been purchased by Robert and Dianto and construction undertaken with money loaned them by Dianto's mother, Germaine Chomette. Title was placed in Germaine's name, as Robert "wanted [his] name nowhere on it."

In June of 1974, a deed was executed and recorded in which Land Dynamics, a California corporation, granted to Linda the parcel referred to herein as Lot 38. Lot 38 was an unimproved five-acre lot located directly across a roadway from 37049 Totem Lane. Linda and Dianto testified that Lot 38 was purchased for Linda by Robert and Dianto as a gift with the hope she would eventually live there. Linda was then a senior in high school. She continued living and attending school in the Los Angeles area although the rest of the family moved to its new residence in Squaw Valley in late 1974. After finishing high school Linda moved to the family residence.

During the 1974-1976 period, the family (including Linda) put up a barbed wire fence around Lot 38. A well was drilled on the property also, though Linda could not say precisely when. This well supplied the family residence across the road with some of its water, and neither Linda nor Dianto could remember it ever running dry. Also placed on the property at some time was an underground diesel fuel tank. In September 1976, Linda moved from the family residence permanently.

Linda paid, directly or indirectly, all taxes on Lot 38 from 1974 through 1989.

In 1983, Robert went to prison on various charges. During the investigation leading to his conviction, the Internal Revenue Service (IRS) seized a host of documents from the family residence. Among those documents, it appears, were the recorded grant deed naming Linda as title holder to Lot 38, and *another* deed to Lot 38, apparently signed by Linda as grantor in September of 1976, but with no named grantee.

Robert was released from prison around 1987, about the same time his marriage to Dianto terminated.

In February of 1990, Linda learned that Robert and a woman had been seen digging on Lot 38 with a backhoe. On further investigation, Linda discovered that record title to Lot 38 was now in the name of Carol Ann Slater by virtue of a deed purportedly signed by Linda on September 10, 1976, but not recorded until November 6, 1989.

Linda admitted that the signature on the deed appeared to be hers, but she did not remember signing the deed. She was adamant, however, that if she

actually signed the deed in 1976, she did not understand what it was she was doing. In 1976 she did not know Carol, who would have then been about nine years old, and she never intended to transfer any interest in Lot 38 to her.

After further investigating the matter, Linda discovered that all documents seized by the IRS in its case against Robert had been returned to Robert and Dianto's accountants who then mistakenly released them to Robert. Those documents apparently included the original deed by which Linda acquired title from Land Dynamics as well as the "blank" deed signed by Linda in 1976.

According to Linda, Robert and Carol dug a hole or trench some four to six feet wide, six to ten feet long, and six feet deep on Lot 38 right next to the diesel tank. Linda noted diesel fuel in the bottom of the trench. Other miscellaneous damage had supposedly been done to the property, including the well, which, according to Dianto, had been sabotaged. In addition, a water line running under the road was leaking, causing damage.

Robert testified that he purchased Lot 38 for $1,500 and he had title recorded in Linda's name as a *conditional* gift. The "conditions" involved putting Linda in a position where Robert could monitor her behavior. According to Robert, Linda did not meet the conditions.

Robert was present in 1976 when Linda, before a notary public at the Bank of America, signed the "blank" deed as grantor. Even though his name did not appear on that deed or on any other instrument of title, Robert claimed that Lot 38 was his. He denied that Linda paid the taxes on Lot 38 from 1974 to 1987. He claimed that he paid the taxes and was directly responsible for virtually all of the improvements on Lot 38.

After his release from prison and the dissolution of his marriage to Dianto, Robert met Carol Ann Slater. The two shared office space for their respective businesses in Fresno during 1989. During this time, the papers previously seized by the IRS were delivered to Robert by the accountants. Among these papers, Robert and Carol found the "blank" deed to Lot 38. Carol believed that Robert held title to Lot 38, apparently by virtue of Linda's signature and his possession of the deed.

In November of 1989, Robert typed Carol's name into the blank left on the deed for the grantee's name, and with Carol, went to the Fresno County Hall of Records and recorded the deed. As far as Carol was concerned, Robert was giving her the property. Shortly after the deed was recorded,

Robert and Carol were married. They denied that they caused any damage to the property.

Linda filed this action on September 20, 1990, seeking to quiet her title to Lot 38, declaratory relief, injunctive relief, and damages for fraud and conspiracy. Robert and Carol answered and cross-complained. The cross-complaint, which purported to assert various causes of action against Linda, was later supplanted by amended pleadings. The third amended cross-complaint added new parties and causes of action. It was ultimately dismissed before trial. When Robert and Carol moved to be relieved from their alleged mistake in dismissing the cross-complaint, the court granted their motion on the condition they reimburse Linda's counsel $4,000 for fees incurred by Linda as a result of the alleged mistake. Robert and Carol did not satisfy the condition, so the action went to trial on the complaint only.

In its verdict, the jury awarded title to Lot 38 to Linda and awarded Linda damages of $60 each from Robert and Carol for damage done to the property. The jury further made specific findings that Robert and Carol had both acted fraudulently in transferring title from Linda to Carol, and that Carol was obligated to pay Linda for $70,000 for attorney fees "incurred in bringing this action against [Carol] only to protect her ownership interest in Lot No. 38 . . . ."

## DISCUSSION

### I. *The Quiet Title Judgment*

#### A. *The jury was properly instructed on the burden of proof.*

It is the responsibility of the trial court to "instruct the jury as to which party bears the burden of proof on each issue and as to whether that burden requires that a party raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt." (Evid. Code, § 502.)

The trial court instructed the jury that Linda had only to prove her title to Lot 38 "by a preponderance of the evidence." ▮ Robert and Carol contend that this instruction was erroneous and requires reversal. They rely on Evidence Code section 662 which provides: "The owner of the legal title

to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

Robert and Carol find some support for their argument in Miller and Starr's California Real Estate (2d ed. 1990). Therein, in a discussion on quiet title actions, the authors observe: "The plaintiff has the burden of establishing his claim to the property, and he must prove his title by 'clear and convincing proof,' rather than the normal preponderance of the evidence." (9 Miller & Starr, *op. cit. supra*, at § 30:55, p. 442, fns. omitted.) In a footnote, the authors cite Evidence Code section 662 and *Tannehill v. Finch* (1986) 188 Cal.App.3d 224 [232 Cal.Rptr. 749], as authority for the quoted statement.

Notwithstanding Miller and Starr's implication to the contrary, we see nothing in the language of Evidence Code section 662 which applies the elevated standard of proof to *all* quiet title actions, and in our opinion it does not apply in the instant case.

Evidence Code section 662 has application, by its express terms, when there is no dispute as to where *legal* title resides but there is question as to where all or part of the *beneficial* title should rest. For instance, in *Toney v. Nolder* (1985) 173 Cal.App.3d 791 [219 Cal.Rptr. 497], there was no question about who held *legal* title to the property; the plaintiff conceded that the parties had agreed that legal title should be taken in the defendant's name. (*Id.* at p. 793.) Rather, the issue at trial was whether the parties had entered into an oral agreement that they were purchasing the property as equal partners. In short, the question was whether the plaintiff had an equitable or beneficial interest in the property—*not* whether the defendant held legal title. Consequently, the presumption and standard of proof of section 662 applied.

*Tannehill v. Finch, supra,* 188 Cal.App.3d 224, the case cited by Miller and Starr, was a so-called *Marvin* action (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]). Tannehill sought to establish that property purchased in Finch's name during their six-year relationship was, pursuant to an oral agreement, to be shared equally between the parties. The legality of Finch's title to the property was not at issue; rather, the crux of the case was Tannehill's beneficial rights in that property. Consequently, Evidence Code section 662 was again applicable.

Many other cases involving disputes over beneficial interests in property, but not legal title, have employed the clear and convincing burden

of proof. (See, e.g., *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478 [273 Cal.Rptr. 696]; *Protestant Episcopal Church* v. *Barker* (1981) 115 Cal.App.3d 599 [171 Cal.Rptr. 541]; *Spaulding* v. *Jones* (1953) 117 Cal.App.2d 541 [256 P.2d 637]; *Rench* v. *McMullen* (1947) 82 Cal.App.2d 872 [187 P.2d 111]; *Olson* v. *Olson* (1935) 4 Cal.2d 434 [49 P.2d 827].) We are unaware, however, of a single reported case in which Evidence Code section 662's presumption and burden were applied when the legal title itself was in dispute. Nor can we see anything in the language of section 662 requiring such application.

Consequently, we conclude that Evidence Code section 662 does not apply to all quiet title actions. As its express terms state, it applies when valid legal title is undisputed and the controversy involves only beneficial title.

This case was bottomed on a challenge to the legality of Carol's title. Linda did not claim that Carol holds title subject to a constructive trust; rather, she claimed that Carol's title was void, as a blank deed passes no title (unless subsequently filled in by an agent of the grantor who possesses *signed written authority* to do so). (See Civ. Code, § 1624, subd. (c); see also *Bryce* v. *O'Brien* (1936) 5 Cal.2d 615, 616 [55 P.2d 488]; *Trout* v. *Taylor* (1934) 220 Cal. 652, 656 [32 P.2d 968]; *Green* v. *MacAdam* (1959) 175 Cal.App.2d 481, 485-486 [346 P.2d 474].)

The court correctly instructed the jury that the preponderance of the evidence standard of proof governed its determination of the factual issues submitted to it.

B.-H.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II.  *Linda Was Not Entitled to Recover Attorney Fees From Carol**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

That portion of the judgment awarding Linda Murray the amount of $70,000 for attorney fees from Carol Ann Slater Murray is stricken, and the

*See footnote, *ante*, page 1062.

amount of the monetary judgment in favor of Linda Murray against Carol Ann Slater Murray is reduced to $60. As so modified, the judgment is affirmed. Each party shall bear his or her own costs on appeal.

Ardaiz, Acting P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied August 5, 1994, and appellants' petition for review by the Supreme Court was denied September 28, 1994.