[No. S139685. Aug. 13, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
YOUSSEF SEMAAN et al., Defendants;
ELHAM CHERFAN et al., Third Party Claimants and·Appellants.

## Counsel

Jerome D. Stark and Robert Klein for Third Party Claimants and Appellants.

Grover Trask, District Attorney, and Elise J. Farrell, Deputy District Attorney, for Plaintiff and Respondent.

David R. LaBahn for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## Opinion

**WERDEGAR, J.**—Penal Code section 186.11,[1] sometimes called the "Freeze and Seize Law,"[2] permits the superior court in certain white-collar criminal cases to take possession of assets under the defendants' control and to preserve them for the payment of restitution. A person who claims an interest in frozen assets may seek their release by filing a verified claim with the superior court. (§ 186.11, subd. (e)(6).) In this case, the superior court denied a claim filed by the person whose name appeared on a frozen bank account controlled by defendants, finding the claimant failed to show she actually owned any of the money in the account. The Court of Appeal, reasoning that the People had the burden to show by clear and convincing evidence the claimant did not own the disputed funds, reversed. We conclude the Court of Appeal erred and, thus, reverse.

### I. Background

Defendants Youssef Semaan and Lilliane Semaan pled guilty to a complaint charging them with 99 felony counts arising out of a "credit card bust-out" scheme.[3] The scheme exploited "courtesy checks" mailed by credit card issuers to cardholders in order to encourage the cards' use. Using courtesy checks, defendants would overpay by thousands of dollars the

---

[1] All further statutory citations are to the Penal Code, except as noted.

[2] E.g., *People v. Green* (2004) 125 Cal.App.4th 360, 363 [22 Cal.Rptr.3d 736].

[3] We grant the People's request to augment the record to include the reporter's transcripts of hearings in the criminal case on November 25, 2002, and November 21, 2003. The transcripts are properly part of the record because a proceeding under section 186.11 is "pendent to the criminal proceeding . . . ." (*Id.*, subd. (e)(2).)

balance due on a credit card; a card issuer that received an overpayment would credit the account instead of refunding the overpayment, thus temporarily increasing ("busting out") the amount that could be charged on the card; defendants would then spend the busted-out credit limit before the courtesy check was dishonored for insufficient funds. Defendants also submitted fraudulent credit applications to merchants in order to finance purchases, and then used courtesy checks on busted-out credit card balances to delay collection. Through this scheme, defendants ultimately stole over $1.6 million, committing in the process 24 counts of grand theft (§ 487, subd. (a)) and 75 counts of fraudulently drawing checks without sufficient funds (§ 476a). Based on these offenses, defendant Youssef Semaan was sentenced to 14 years in state prison and defendant Lilliane Semaan to 10 years' probation. Defendants were also ordered to pay $1,632,418.61 in restitution. (See § 186.11, subd. (i)(1)(A), (B).)

While the criminal case was pending, the People filed a petition under section 186.11 to preserve assets and property for the payment of restitution. (See *id.*, subd. (e)(2).) The superior court granted the petition and appointed a receiver to take possession of a list of assets and property the People had identified in the course of their investigation as being in defendants' control.

Among the frozen assets were bank accounts in the names of Marie Semaan and Elham Cherfan, both of whom appear to reside in Lebanon and are sisters-in-law of defendant Youssef Semaan. Both women filed claims asking the court to release money from the frozen accounts. (See § 186.11, subd. (e)(6).) The superior court, after an extensive evidentiary hearing, rejected both claims. Neither claimant appeared at the hearing or submitted a declaration. While each claimant in her written claim asserted ownership of some of the frozen funds held in her name, the claims were verified by claimants' jointly retained attorney and, thus, while procedurally proper, had no evidentiary value. (Code Civ. Proc., § 446, subd. (a).)[4] Both claimants, through an accountant expert witness, attempted to trace to the frozen accounts funds once assertedly belonging to them. Claimant Elham Cherfan sought to prove that $325,067.08 of the funds held in her name represented defendants' repayment of a loan. But the purported loan was not documented, and the evidence did not support her expert's conclusion about the circumstances under which the loan was supposedly made. The superior court

---

[4] Under Code of Civil Procedure section 446, subdivision (a), when a pleading is verified by the attorney for a party, "the pleadings shall not otherwise be considered as an affidavit or declaration establishing the facts therein alleged." Verification by the attorney is not, as claimants seem to suggest, a defect in the verification to which the People were required to object. Such verification does, however, as noted, affect a pleading's evidentiary value.

ultimately found that the accountant's opinion testimony concerning the loan "lack[ed] credibility" and denied the claim for "insufficient evidence." The Court of Appeal affirmed this part of the superior court's decision, and Cherfan has not sought review of the Court of Appeal's decision as to her. We therefore do not consider her claim further.

As mentioned, the superior court also denied the claim of Marie Semaan (hereafter Marie). Marie did not appear at the hearing and made no sworn statements in support of her claim. In an amended claim, which was also verified by her attorney, Marie asserted that "$219,577.53 . . . in the [frozen bank account] . . . is the sole property of claimant and said money is not the fruits or product of any criminal activity." As mentioned, however, the amended claim's factual assertions had no evidentiary value. (Code Civ. Proc., § 446, subd. (a).)

At the hearing on her claim, Marie's attorney presented a single witness—the same accountant mentioned above—who opined, based on her effort to trace the source of the funds in the frozen bank account, that Marie owned the funds. The witness had not met or spoken to Marie. The witness's investigation of the bank account showed a beginning balance of $1,986.89, deposits of $22,921 representing Social Security payments in the name of Marie and Elias Semaan,[5] a deposit of $196,771.20 representing the proceeds of the sale of a house on Mountain Court in Brea, California, and a transfer of $380.40 from another account in Marie's name.

The People, for their part, accepted the expert witness's conclusions about the source of the funds but endeavored to show that Marie's name was used by defendants as an alias for financial transactions. Through cross-examination of Marie's own accounting expert witness, and through direct examination of a detective serving on the financial crimes task force of the United States Secret Service, the People showed the following: Defendants possessed and used for their own benefit more than six credit cards in Marie's name. Defendants also possessed a driver's license and Social Security card in Marie's name. All 24 checks written on the account, and all ATM withdrawals from the account, were for the benefit of defendants; all of these transactions (totaling $2,482) occurred at a time when Marie was not in the United States. The registered address for the bank account was a post office box rented by defendant Youssef Semaan in Marie's name. A signature card existed for the bank account, but neither witness claimed any expertise in

---

[5] The record does not make clear who Elias Semaan is.

handwriting identification and neither attempted to authenticate the signature as Marie's. The several documents purporting to bear Marie's signature in fact bore apparently very different signatures, none of which was shown to be her own. Ownership of the house was unclear. In her amended claim, Marie asserted that her deceased husband Simon Semaan owned the Brea house; in that document she did not, however, claim an ownership interest in the house, as opposed to the funds in the account. While a last will and testament for Simon Semaan was in evidence, the will contained no listing of assets. The Brea house was sold by defendant Youssef Semaan while Marie was in Lebanon, under a power of attorney purportedly executed by her in Beirut. But the People questioned the power of attorney's authenticity, and no witness attempted to authenticate Marie's signature on the document. Prior to the sale, and while Marie was in Lebanon, a deed to the house was created in her name; the People questioned the deed's authenticity, and it was not shown to be genuine. Finally, the escrow check payable to Marie representing the proceeds of the sale was endorsed and deposited into the bank account while she was out of the country. One attempt, apparently by Marie, to withdraw money from the bank account from overseas failed for unknown reasons.

Based on this evidence, the superior court rejected Marie's claim. The court held that, "[a]lthough [Marie] may have once had some property interest in the Mountain Court residence, she has failed to show evidence that she owned any of the money in the Wells Fargo Account . . . . Thus, it is the order of this court that [Marie's] claim is denied."

The Court of Appeal reversed. In the court's view, once "Marie met her initial burden of establishing legal title to the bank funds from the sale of her home, the burden of producing evidence shifted to the People to refute by clear and convincing evidence her legal title to the funds." The court based this conclusion on Evidence Code section 662, which provides that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." The court acknowledged that "there is evidence of defendants' control over Marie's bank account funds," and that "it is possible defendants were using Marie's account for money laundering . . . ." Nevertheless, the court concluded "the People have not established by clear and convincing evidence that Marie did not have a legitimate interest in the money deposited in her bank account." We granted the People's petition for review.

## II. Discussion

The People contend the Court of Appeal erred in applying Evidence Code section 662 to shift to the People the burden of disproving a claimant's interest in frozen assets once the claimant has shown nominal title. "[S]uch a minimal showing," the People contend, "would permit a sophisticated white collar criminal to retain stolen property or other assets simply by placing the asset into the name of a willing, or even an unwilling or unsuspecting, friend or family member." We conclude section 662 does not apply to this case.

Section 186.11 says nothing about evidentiary burdens or standards of proof. The applicable burdens and standards are, however, fairly inferable from the language and purpose of the statute, considered in the light of the default rules set out in the Evidence Code.

■ Section 186.11, like other provisions of the Penal Code (e.g., § 1202.4 et seq.), implements the state Constitution's declaration "that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, subd. (b).) The principal focus of section 186.11, as noted, is to facilitate the payment of restitution by "prevent[ing] dissipation or secreting of assets or property . . . ." (*Id.*, subd. (e)(2).) Section 186.11 accomplishes this by authorizing the superior court to order preliminary relief, including "temporary restraining order[s], preliminary injunction[s], the appointment of a receiver, or any other protective relief necessary to preserve the property or assets" (*id.*, subd. (e)(2)) from which restitution might properly be paid. Assets or property become subject to the court's jurisdiction on a showing that the defendant controls them. ■ When a person has been charged under section 186.11 with an aggravated white-collar crime enhancement, "any asset or property that is in the control of that person, and any asset or property that has been transferred by that person to a third party, subsequent to the commission of any criminal act alleged pursuant to subdivision (a), other than in a bona fide purchase, whether found within or outside the state, may be preserved by the superior court in order to pay restitution and fines imposed pursuant to this section." (*Id.*, subd. (e)(1).)

■ A showing that the defendant controls assets or property suffices to justify the issuance of preliminary relief because control furnishes an inference of ownership: "A person who exercises acts of ownership over property is presumed to be the owner of it." (Evid. Code, § 638.) ■ Unlike the

state and federal drug-related-asset forfeiture laws (e.g., Health & Saf. Code, § 11470; 21 U.S.C. § 881), section 186.11 does not require that assets or property, to fall within the court's jurisdiction, be connected with criminal activity. This is because a defendant's obligation to pay restitution is a general obligation and not one limited to the value of assets and property connected with crime. While the scope of preliminary relief under section 186.11 is thus very broad, the section also protects the property interests of innocent third parties by giving them the right to file claims to the frozen assets (*id.*, subd. (e)(6)), and by requiring the court, "in making its orders, [to] seek to protect the interests of any innocent third persons, including an innocent spouse, who were not involved in the commission of any criminal activity" (*id.*, subd. (g)(5)).

■ To assert a claim to frozen assets, as mentioned, a claimant must file "a verified claim stating the nature and amount of his or her interest in the property or assets." (§ 186.11, subd. (e)(6).) This plain language is reasonably interpreted as meaning simply that the claimant must show an ownership interest. Also fairly inferable from the statutory language is the requirement that the claimant be "innocent" and "not involved in the commission of any criminal activity."[6] (*Id.*, subd. (g)(5).) Because section 186.11 does not expressly assign the burden of proving these facts, the burden belongs to the claimant. This is the default rule set out in Evidence Code section 500: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." To assign the burden of proving ownership to the claimant of frozen assets is also consistent with the evidentiary showing on which assets are frozen under section 186.11. The People's showing that the defendant controls assets gives rise to the presumption that he or she owns them and, thus, places on anyone who would prove the contrary the burden of producing evidence to that effect. ■ Evidence Code section 638,[7] which articulates the presumption just mentioned, is a presumption affecting the burden of producing evidence. (Evid. Code, § 630.)

The court's finding that a claimant does not have an interest in frozen assets is a question of fact resolved on the basis of conflicting evidence and, thus, properly reviewed under the substantial evidence test. (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681 [76 Cal.Rptr.2d 641,

---

[6] The People at trial expressly disclaimed any intention to show that Marie was "a party to the criminal conduct that happened here . . . ."

[7] "A person who exercises acts of ownership over property is presumed to be the owner of it." (Evid. Code, § 638.)

958 P.2d 393]; *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) "The standard is deferential: 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .' " (*People v. Superior Court* (*Jones*), *supra*, 18 Cal.4th 667, 681, italics omitted, quoting *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925].)

Reviewing the superior court's finding under the substantial evidence test, we see no difficulty in affirming. The People's undisputed evidence that defendants exclusively controlled the bank account in Marie's name suffices to uphold the finding. Marie's argument to the contrary, which the Court of Appeal accepted, is that the presumption set out in Evidence Code section 662 compels a different conclusion. We do not agree.

■ Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." Section 662 thus codifies the common law rule (e.g., *Olson v. Olson* (1935) 4 Cal.2d 434, 437 [49 P.2d 827]; *Toney v. Nolder* (1985) 173 Cal.App.3d 791, 796 [219 Cal.Rptr. 497]) that oral trusts in derogation of title are disfavored and must be proved by clear and convincing evidence. (See Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 662, p. 210 [noting that § 662 codifies the rule of *Olson v. Olson*].) "Allegations that deeds absolute are actually mortgages, that conveyances are subject to a trust, and that legal title does not represent beneficial ownership have . . . been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title." (*Weiner v. Fleischman* (1991) 54 Cal.3d 476, 489 [286 Cal.Rptr. 40, 816 P.2d 892].)

Evidence Code section 662 does not apply, however, when title itself is challenged as not genuine. In *Murray v. Murray* (1994) 26 Cal.App.4th 1062, 1067 [31 Cal.Rptr.2d 855], on which the People rely, the Court of Appeal held that section 662 did not apply when the plaintiff in a quiet title action challenged as fraudulent a deed in another person's name. "Evidence Code section 662," the court explained, "has application, by its express terms, when there is no dispute as to where *legal* title resides but there is question as to where all or part of the *beneficial* title should rest." (*Murray v. Murray*,

*supra,* at p. 1067.) "We are unaware, however, of a single reported case in which Evidence Code section 662's presumption and burden were applied when the legal title itself was in dispute. Nor can we see anything in the language of section 662 requiring such application." (*Murray v. Murray, supra,* at p. 1068.) This interpretation of section 662 appears self-evidently correct. Otherwise, the section would encourage fraud by permitting a dishonest person, simply by creating false documents of title, to shift to an innocent owner the burden of proving ownership by clear and convincing evidence.

In the case before us, the whole thrust of the People's case was to show that defendants used Marie's name as an alias for their financial transactions and completely controlled the bank account in question. While Marie's name was on the frozen bank account, no evidence showed that she herself had opened the account or ever successfully exercised control over it. No witness claimed ever to have seen or spoken with Marie, and no witness attempted to authenticate as Marie's own signature any of the various, apparently different signatures attributed to her on financial and legal documents. The People's theory that defendants used Marie's name as an alias had the support of undisputed evidence that defendants possessed credit cards, a driver's license, and a Social Security card in her name, that all checks written on her bank account were written while she was out of the country and to pay defendants' expenses, and that the sale of the Brea house, whose ownership was uncertain, was transacted entirely by defendants. For her part, Marie neither appeared in court nor made any statements under oath claiming ownership of the bank account, the proceeds of the sale of the house, or the Social Security benefits paid in her name. Marie's expert proved only what was not in dispute, namely, that the proceeds of the sale and Social Security benefits were deposited into the account. Finally, while Marie's attorney suggested in argument that she may have been "as much of a victim as anyone else," Marie asserted no claim to restitution for the checks written by defendants on the account.

In conclusion, given the undisputed evidence that defendants used Marie's name as an alias for their financial transactions, and given that the People disputed the genuineness of Marie's title to the bank account and the funds therein, Evidence Code section 662 does not apply. Thus, the burden to prove by a preponderance of the evidence (Evid. Code, § 500) "the nature and amount of . . . her interest in the [claimed] property or assets" (§ 186.11, subd. (e)(6)) remained with Marie. Substantial evidence supports the trial court's finding that she failed to carry this burden.

## III. Disposition

The judgment of the Court of Appeal is reversed in part and the matter remanded for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.