[No. B221020. Second Dist., Div. Six. Feb. 17, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ORSON MOZES, Defendant;
CHRISTEN BROWN, Claimant and Appellant.

**COUNSEL**

Vannessa Kirker for Claimant and Appellant.

Joyce E. Dudley, District Attorney, and Paula M. Waldman, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**COFFEE, J.**—The "Freeze and Seize Law" of Penal Code section 186.11 permits the court in certain white-collar criminal cases to take possession of assets under a defendant's control and preserve them for the payment of restitution.[1] (*People v. Semaan* (2007) 42 Cal.4th 79, 82 [64 Cal.Rptr.3d 1, 163 P.3d 949] (*Semaan*).) A person who claims an interest in frozen assets may seek their release by filing a verified claim with the superior court. (§ 186.11, subd. (e)(6).) Here, under the facts presented, we decide that the claims of white-collar crime victims have priority over a claimant with a child support order seeking the same assets.

Christen Brown is Orson Mozes's former wife. Mozes pled guilty to 17 counts of theft by false pretenses, a white-collar crime, and agreed to pay restitution to the victims of his crimes.

Following lengthy proceedings concerning the distribution of Mozes's frozen assets, the trial court denied Brown's third party claim that a child support order should receive priority over the victim restitution order. Brown's appeal raises an issue of first impression—whether child support

---

[1] All statutory references are to the Penal Code unless otherwise stated.

orders must be given priority over white-collar crime victim restitution in Freeze and Seize proceedings. We affirm.

## BACKGROUND

Brown and Mozes were married for approximately 25 years. During the 1990's, Mozes worked for an adoption agency until its owner "kicked him out." In 2001, Brown and Mozes formed Adoption International Program, Inc. (AIP), a Pennsylvania corporation.

From 2001 through 2004, Brown was president and executive director of AIP, and a member of its board of directors. On October 17, 2003, Brown signed a sworn affidavit declaring that she was the executive director of AIP, and was involved in and oversaw all aspects of its business. With Brown and others, Mozes operated AIP from the Brown-Mozes home, which was in Santa Barbara until they moved to Montecito in 2004.

By 2004, Brown ceased acting as AIP's president and executive director. She remained on its board and remained involved in AIP operations after 2004.

AIP posted photographs of individual children on the Internet for viewing by prospective adoptive parents. Most of the children were in Russia, Ukraine, or Kazakhstan. The AIP contract disclosed that AIP could not guarantee that a child would be placed with the prospective adoptive family. Mozes nonetheless gave prospective adoptive parents assurances that he could "hold" a specific child in a foreign country for them, and that it was "rare" for circumstances to prevent prospective parents from adopting their selected child. Prospective adoptive parents relied on Mozes's representations, paid AIP thousands of dollars, became attached to their selected child, and invested substantial time and effort to adopt that child. AIP clients often learned that their selected child was not available.

In 2005, AIP client Vanessa Donaher and her family planned to adopt Valena, a child who they understood was being held for them in Kazakhstan. While preparing to go there to meet Valena, the Donahers learned that weeks earlier, she was placed with a family in South Africa. Vanessa wrote to Mozes regarding the "fraudulent scam or gross negligence" surrounding their adoption. Brown responded with an e-mail message to Vanessa stating that AIP's lawyer had "assured [AIP] that Valena would be held" for the Donahers; that "the ministry made a mistake"; and that it was "unthinkable that [AIP] would not refund all of [the Donahers'] money." Brown added "that [another] child [would be] coming Monday," and expressed her hope that Vanessa would "at least look at this girl."

In 2006, Brown and Mozes interviewed applicants for employment with AIP, including employees Kevin Anderson and Jayne Howarth. While working at AIP, Howarth observed Brown deal with "upset" clients. After working there for several months, Howarth realized that something was "very wrong" at AIP and she quit.

Meanwhile, in 2005, Brown and Mozes had started living in separate sections of their home. In July 2006, Brown filed a petition for dissolution of their marriage. (*In re Marriage of Brown & Mozes* (Super. Ct. Santa Barbara County, 2008, No. 1221158).)

Mozes continued to operate AIP for the balance of 2006 and part of 2007. Anderson worked with him until Mozes left California, his family, and AIP, without advance notice, on June 22, 2007. Brown learned of his departure when his sister advised her of a note he left for Brown. Mozes's note instructed Brown to "pay all [his] debts from the sale of [their Montecito] house," and told her he had left a power of attorney in his desk. The note stated that he was "sure the proceeds from the house [would] adequately pay [his] debts."

When he left, Mozes took the AIP computer and virtually all funds in the AIP accounts. Kathy Lynch, a bookkeeper, estimated that Mozes took $135,817.50 in AIP owner's capital in 2007. Brown later asserted that Mozes withdrew $152,317.50 from the AIP business checking account in the months before he left. Brown worked at AIP with Anderson after Mozes left. She spent substantial time and effort to locate another agency that agreed to accept the remaining AIP clients.

On March 28, 2008, the prosecution filed a complaint charging Mozes with 62 counts of theft by false pretenses, on various dates. (§ 532, subd. (a).) The named victims were prospective adoptive parents. On April 1, 2008, the trial court issued a warrant for Mozes's arrest. On April 14, 2008, it issued an order compelling testimony of, and granting use immunity to, Brown.

The dissolution proceedings continued in Mozes's absence. On August 7, 2008, the family law court issued child support, spousal support, and property distribution orders. It awarded Brown all proceeds of the sale of the marital home and authorized the placement of Mozes's community interest in the home in a "[c]ommunity [a]ccount." The home sale yielded approximately $850,000.

The family law court ordered Mozes to pay $4,016 of child support monthly, effective July 21, 2006, and $6,807 of spousal support monthly, effective September 1, 2008. The child support and spousal support orders

authorize Brown to withdraw monthly support from the community account. The support orders were based upon monthly imputed incomes of $25,000 for Mozes and $1,000 for Brown. The court also ordered Mozes to pay Brown's attorneys' fees ($17,000) and costs ($8,133), and $100,848.66 for credits and reimbursements. In addition, it awarded Brown $362,249.99, for breach of spousal fiduciary duties, including $275,109.50 attributable to "Owner's Capital (1/06-607)."

In December 2008, Florida authorities arrested and released Mozes. Later the Miami-Dade Police Department (MDPD) Warrants Bureau learned about the outstanding Santa Barbara County warrant for Mozes's arrest. On December 29, 2008, MDPD officers arrested Mozes and seized assets that he held in Florida. The seized assets included currency and gold coins, with a combined value of more than $300,000. The officers also located receipts that showed the coins were purchased in Florida on several occasions from July 2007 through September 2008.

On March 24, 2009, the prosecution filed an amended complaint charging Mozes with 59 counts of theft by false pretenses on several dates from 2004 through 2007, with an aggravated white-collar crime allegation as to each count. (§§ 532, subd. (a), 186.11, subd. (a)(2).) The prosecution simultaneously filed a petition to preserve Mozes's assets, subject to levy or seizure under section 186.11, subdivision (a)(3). On March 24, the trial court issued an interim order to protect the seized assets by directing placement of cash and equivalent assets in an FDIC-insured, interest-bearing bank account (cash and equivalent assets), and of the coins in a safe deposit box, pending further order of the court. On April 9, 2009, the trial court issued a temporary order restraining Mozes and his agents from withdrawing, transferring or otherwise disbursing or disposing of his assets, including those described in the March 24, 2009 order.

On July 2, 2009, Mozes pled guilty to 17 felony counts of theft by false pretenses and admitted the truth of the section 186.11, subdivision (a)(2) aggravated white-collar crime allegations. As part of a plea bargain, Mozes agreed to a total amount of $746,574.52 in restitution, which included the losses of the victims of all 59 counts of the amended complaint. He also agreed to release his interest in the seized assets for distribution to his victims.

On July 10, 2009, the prosecution filed a request for distribution of all seized assets to the victims, pursuant to section 186.11, subdivision (j). On July 14, 2009, Brown filed a response objecting to the proposed distribution and asserting that her claims for child and spousal support should receive priority over the victims' restitution. (This appeal concerns only the child support claim.)

On July 17, 2009, Brown filed a notice of judgment lien with the California Secretary of State stating that as of that date, $304,792.98 was required to satisfy the August 7, 2008 family law court judgment in the dissolution action. (*In re Marriage of Brown & Mozes, supra,* No. 1221158.) On July 22, 2009, at Brown's request, the family law court issued a writ of execution for payment of child support. Brown's attorney represented that Mozes then owed $166,249.99 for child support, including accrued interest. On July 23, 2009, the sheriff served notice of the child support levy on the prosecution. In late July or early August 2009, Brown contacted the Department of Child Support Services (DCSS) concerning the unpaid child support.

Brown did not apply any part of Mozes's $425,000 interest in the community account to satisfy his child support or spousal support obligations. She exhausted his share of that account to pay her attorneys' fees, costs, and part of Mozes's obligations to pay her for reimbursements, credits and breaches of his fiduciary duty.

On August 14, 2009, the trial court conducted the first session of the section 186.11 Freeze and Seize distribution hearing. As the session began, Brown's counsel introduced Kelly McLaughlin, a DCSS attorney, and stated that he believed she "would like to address the Court." The court denied DCSS's request to participate as untimely, without prejudice to its right to file appropriate documentation seeking to appear. The court held proceedings on four other dates, including the last session on October 2, 2009. DCSS did not renew its request to participate or file appropriate documentation.

On October 27, 2009, the trial court issued a written decision. It found that the frozen assets were a product of Mozes's "operation of a fraudulent business [(AIP)]"; the only persons with " 'legitimately acquired interests' " in Mozes's frozen assets were "the victims of his crimes"; Brown did not have a legitimately acquired interest in them; and that she was not an innocent spouse. It rejected Brown's argument that section 1202.4, subdivision (f), or any other authority, required it to give her child support claim priority over aggravated white-collar crime restitution and ordered that Mozes's frozen assets be distributed to the victims.

## DISCUSSION

Brown contends that section 1202.4, subdivision (f), and other statutes, required the court to grant Brown's child support claim priority over restitution for the victims of Mozes's white-collar crimes. We disagree.

**(1)** Section 186.11 is designed to promote the state constitutional rights of crime victims to the payment of restitution from " 'persons convicted

of the crimes for losses they suffer.' (Cal. Const., art. I, § 28, subd. (b).)" (*Semaan, supra*, 42 Cal.4th at p. 86.) "When a person has been charged under section 186.11 with an aggravated white-collar crime enhancement, 'any asset or property that is in the control of that person . . . may be preserved by the superior court in order to pay restitution and fines imposed pursuant to this section.' (§ 186.11, subd. (e)(1).) There is no requirement that the seized assets be traceable to or the actual product of any criminal activity. [Citation.]" (*Q-Soft, Inc. v. Superior Court* (2007) 157 Cal.App.4th 441, 447 [68 Cal.Rptr.3d 687] (*Q-Soft*).)

■ "Where a defendant is *convicted* of a section 186.11 offense, the trial court is required to make a finding at that time as to what portion of the frozen property or assets, if any, may be levied upon to pay fines or victim restitution. (§ 186.11, subd. (g)(5).) Victims are entitled to 'full restitution' for economic loss suffered as a result of the defendant's conduct 'based on the amount of loss claimed by the victim or victims or any other showing to the court.' (§ 1202.4, subd. (f).) The restitution order must be sufficient 'to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. . . .' (§ 1202.4, subd. (f)(3)(A).)" (*Q-Soft, supra*, 157 Cal.App.4th at p. 447.)

■ In section 186.11 proceedings, a third party claimant bears the burden of proof to establish that the claimant is " 'innocent' and 'not involved in the commission of any criminal activity' " (*Semaan, supra*, 42 Cal.4th at p. 87), and that the challenged assets are neither a product of the defendant's criminal activity nor otherwise actually owned by the defendant (*Q-Soft, supra*, 157 Cal.App.4th at p. 450). We apply the substantial evidence standard in reviewing the court's findings in section 186.11 proceedings. (*Semaan, supra*, at pp. 87–88.)

*Substantial Evidence Supports the Trial Court's Finding*
*That Brown Does Not Have a Legitimately Acquired Interest*
*in the Frozen Assets*

■ Brown stresses that section 186.11, subdivision (i)(3) mandates that "[i]n making its final order [of distribution], the court shall seek to protect the legitimately acquired interests of any innocent third persons, including an innocent spouse, who were not involved in the commission of any criminal activity." Brown failed to meet her burden of establishing that she was an innocent third person with a legitimately acquired interest in Mozes's frozen assets. (*Semaan, supra*, 42 Cal.4th at p. 87; *Q-Soft, supra*, 157 Cal.App.4th at p. 450.)

In claiming a legitimate interest in the frozen assets in the trial court, Brown asserted that she and Mozes used home equity lines of credit to meet their living expenses, rather than Mozes's income from AIP. She testified regarding home loans but failed to present any forensic accounting. The AIP 2006 tax return reported that its gross income was over $450,000. The family law court imputed a monthly income of $25,000 to Mozes. The trial court found that between 2004 and 2007, Mozes's AIP earnings produced at least $770,000.

After Brown received notice that gold coins were seized from Mozes in Florida, she signed a sworn declaration in July 2009, stating that gold coins were missing from the safe in the family's Montecito home after Mozes left California. Mozes left California in June 2007. The record includes receipts showing that the seized coins were all purchased after June 2007.

Brown also claims, as she did below, that she had no significant involvement in the operations of AIP during the period when Mozes accepted the victims' payments. The record belies her claim. For example, she communicated with disgruntled AIP clients and participated in hiring AIP employees during the relevant period. Substantial evidence supports the trial court's findings that the frozen assets were the product of criminal activity and that Brown did not have a legitimately acquired interest in them. (§ 186.11, subd. (i)(3).) Substantial evidence also supports its finding that Brown was not an innocent spouse for purposes of section 186.11, subdivision (j)(3).

*Child Support Orders Should Not Receive Priority over*
*Victim Restitution in Freeze and Seize Proceedings Where*
*the Third Party Claimant Has Not Established Any*
*Legitimate Interest in the Frozen Assets*

Brown also argues that when read together, section 1202.4 and Family Code sections 4011 and 17523 "demonstrate the policy of the state of California that child support orders are given the utmost priority in any contest between claimants to any fund or asset in the possession of delinquent support obligor," including restitution to third party victims. We disagree.

In arguing that child support takes priority over restitution to third party victims, Brown ignores or minimizes the fact that this case involves a special category of victims—victims of aggravated white-collar crimes. The Legislature enacted section 186.11, a specific statute to protect aggravated white-collar crime victims and their right to receive restitution. (See, e.g., § 186.11, subd. (e)(2) [authorizing the prosecution to seek a temporary restraining order to preserve assets]; § 186.11, subd. (e)(3) [requiring notice to persons who might have an interest in protected assets]; § 186.11,

subd. (e)(6) [providing an opportunity for persons to claim an interest in protected assets]; § 186.11, subd. (i)(3) [providing protection for legitimately acquired interests of innocent third persons].) In contrast, section 1202.4 is a general restitution provision. To the extent that there is a tension or conflict between the general and specific statutory provisions, the specific provisions control. (*Capitol Racing, LLC v. California Horse Racing Bd.* (2008) 161 Cal.App.4th 892, 901–902 [75 Cal.Rptr.3d 384].)

Brown bases her argument that the trial court erroneously failed to give her child support order priority largely upon the following language in section 1202.4, subdivision (f): "The court may specify that funds confiscated at the time of the defendant's arrest . . . be applied to the restitution order if the funds are not exempt for spousal or child support or subject to any other legal exemption." Brown also relies upon Family Code sections 17523 and 4011 in making her argument. For reasons we shall explain, Family Code section 17523 has no application to this case.

We first consider whether reading section 1202.4 with Family Code section 4011 compelled the trial court to give the child support order priority, when viewed with other relevant laws, including our state Constitution. Family Code section 4011 provides: "Payment of child support ordered by the court shall be made by the person owing the support payment before payment of any debts owed to creditors." Brown argues that the conflict between Family Code section 4011 and the section 186.11 provisions that favor white-collar crime victims can be reconciled by reading those sections together to mean that child support orders issued before the confiscation of section 186.11 funds are exempt. We disagree.

Section 1202.4 implements an important state constitutional policy. Our state Constitution declares: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) Sections 186.11 and 1202.4 et seq. implement that declaration. (*Semaan, supra,* 42 Cal.4th at p. 86.) Brown's proposed application of section 1202.4, subdivision (f) to reconcile the different priorities of section 186.11 and Family Code section 4011 ignores the compelling constitutional purpose underlying section 1202.4.

Moreover, the facts of this case illustrate why it would be absurd to conclude that section 1202.4, subdivision (f), and Family Code section 4011 always compel a court to pay child support from frozen assets in section

186.11 proceedings. The trial court gave Brown ample opportunity to establish that she had a legitimate interest in Mozes's frozen assets. It unequivocally found that the frozen assets were derived from Mozes's criminal conduct, and the only persons with legitimately acquired interests in the funds seized are the victims of his crimes. It also found that Brown was "not an innocent spouse (or person)," and did "not have a 'legitimately acquired interest' in the confiscated assets."

 We must follow a statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended. (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912].) If the plain meaning of Family Code section 4011 is that in any proceeding, a court must pay child support before distributing funds to any other creditor, following that meaning would produce an absurd result here, where the funds were derived from Mozes's criminal conduct and Brown has no legitimate interest in them. The trial court correctly concluded that Brown's child support claim should not be paid from assets that Mozes took from white-collar crime victims. In any case where it is appropriate to grant a child support claim priority, the court can do so, after the claimant establishes that he or she is an innocent third party with a legitimately acquired interest in the seized assets.

Brown also cites Family Code section 17523, which provides that a lien for child support arises by operation of law where the obligor is delinquent and the local child support agency is enforcing the support obligation.[2] In this case, however, there is no evidence that the local child support agency was enforcing the support obligation.

Until August 14, 2009, DCSS made no attempt to appear on behalf of Brown's child in the Freeze and Seize proceedings. Brown's attorney represented that Brown had contacted DCSS a couple of weeks before that date. Brown argues that the trial court refused to permit the DCSS attorney to present the claim of her child. The record indicates otherwise. On August 14, 2009, in denying the DCSS request to appear and participate as untimely, the court specified that its denial was without prejudice to the right of DCSS to file appropriate documentation seeking to appear. DCSS did not exercise that right.

---

[2] Family Code section 17523 provides in part as follows: "(a) Notwithstanding any other provision of law, if a support obligor is delinquent in the payment of support and the local child support agency is enforcing the support obligation pursuant to Section 17400 or 17402, a lien for child support shall arise against the personal property of the support obligor . . . ."

## DISPOSITION

The judgment (order denying Brown's third party claim) is affirmed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied March 16, 2011, and appellant's petition for review by the Supreme Court was denied June 8, 2011, S191802.