Filed 10/28/20  P. v. Shaw CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KIMBERLY ANNE SHAW et al.,<br><br>    Defendants;<br><br>AERO INSTITUTE,<br><br>    Real Party in Interest and<br>    Appellant. | B298177<br><br>(Los Angeles County<br>Super. Ct. No. BA458328) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary Lou Villar, Judge.  Affirmed.

Law Offices of Russell G. Petti and Russell G. Petti for Real Party in Interest and Appellant.

Jackie Lacey, District Attorney, John Niedermann and Kenneth Von Helmolt, Deputy District Attorneys, for Plaintiff and Respondent.

No appearance for Defendants.

_____

The Los Angeles District Attorney alleged a nonprofit's president and secretary, together with a mayor, schemed illegally to divert the nonprofit's funds.  The trial court granted the prosecution's requests for temporary restraining orders freezing the nonprofit's bank accounts under Penal Code section 186.11.  While the criminal cases were ongoing, the court denied the nonprofit's request to dissolve the injunctions.  The nonprofit appeals this decision.  We affirm.

All undesignated statutory references are to the Penal Code.

I

The appellant is AERO Institute, a nonprofit with a mission of "educating the public regarding aerospace and STEM [Science, Technology, Engineering, and Math]."  AERO's main source of revenue has been cooperative agreements with the National Aeronautics and Space Administration (NASA).

Kimberly Anne Shaw and Susan Burgess Miller worked for AERO.  Bank records, corporate documents, and federal tax documents call Shaw AERO's president, president and CEO, or operations manager.  Those records call Miller AERO's secretary or "Secretary/Treasurer."

On June 21, 2017, the People filed a felony complaint against Shaw, Miller, and James Coleman Ledford.  At the time, Ledford was the mayor of the City of Palmdale.

2

The complaint alleged Shaw and Miller conspired with Ledford to embezzle, misappropriate, and steal public funds.

We summarize the alleged multi-part scheme, which spanned from 2009 to 2017. Miller siphoned money NASA had given AERO to companies she owned. She used some of that money to pay Ledford, who performed no substantial work for AERO. Ledford lied to conceal the payments, which were over three times his mayoral income. He voted to approve a seven-year, maximum $3.9 million contract between Shaw and Palmdale. Palmdale leased property to AERO for $1 a year. Amended complaints also alleged Shaw made false statements on AERO's income tax returns.

The district attorney's investigator described the funds in AERO's accounts as "public funds" belonging to NASA.

A February 2019 report from NASA's Office of Investigations questioned how AERO could have lawfully received revenue from NASA in excess of AERO's expenses. The report addressed several issues. One issue was AERO's claimed expenses being greater than its actual expenses. Another issue was AERO's potentially improper expenses, such as payments to Ledford and payments to a consulting company of Shaw's.

The case before us centers around AERO's bank accounts. Before we turn to the accounts, we must detour to provide background about AERO's personnel.

First, we introduce two other AERO employees: Amber Abel and Curtis Cannon. Abel began working for AERO in 2009. As of September 2018, she was AERO's business manager. Cannon said he has served on AERO's board since 2009. From May 2017 until February 2018, he was AERO's "Executive

3

Director." The district attorney's investigator said Cannon took over after the prosecution filed charges against Shaw and Miller.

The record does not specify exactly when Shaw and Miller stopped working for AERO. As of March 2018, AERO still employed Shaw. AERO paid Shaw through at least 2018. AERO's bank statements show payments as late as July 2018 to MillerMosely, a company the prosecution alleged Miller incorporated.

We turn to the bank accounts. Shaw and Miller had access to AERO's bank accounts during the period corresponding to the prosecution's charges against them. AERO had accounts with two banks: Bank of America and Wells Fargo. Shaw and Miller were signatories of AERO's Bank of America accounts until September 2017. Shaw was a signatory of AERO's Wells Fargo account until September 2018.

As of September 27, 2017, Cannon and Abel were signatories for AERO Bank of America accounts. The same month, AERO transferred $581,331 from four other accounts into one Bank of America account. In October 2017, Cannon and Abel opened a Merrill Lynch account and transferred most of AERO's funds, more than $2 million, into it. Shaw and Miller were not signatories on this account.

In August 2018, the People asked the court to issue a temporary restraining order freezing AERO's Bank of America and Wells Fargo accounts. The People did not know about the Merrill Lynch account yet. On August 22, 2018, the same day as Miller's, Shaw's, and Ledford's arraignments, the court issued a temporary restraining order freezing certain Bank of America and Wells Fargo accounts. The basis of the freeze was section 186.11, subdivision (d)(2), which allows a court to freeze a

defendant's assets or property to "prevent dissipation or secreting of assets or property."

On September 6, 2018, Cannon and Abel authorized a transfer of $52,070 from the Merrill Lynch account to Larson O'Brien, the law firm representing Shaw. The following day, AERO deleted Shaw as a signatory of a Wells Fargo account. As of September 7, 2018, Cannon and Abel were signatories on that account.

On September 11, 2018, AERO responded to the People's motion to freeze its bank accounts. Abel submitted a declaration with the response stating AERO had removed Shaw and Miller as signatories from its Bank of America and Wells Fargo accounts.

On September 26, 2018, at the People's request, the court issued another temporary restraining order expanding the freeze to cover the Merrill Lynch account.

The district attorney's investigator filed an affidavit in support of the freeze. The investigator said the source of the funds in the Merrill Lynch account "came from a previously identified suspect account." The investigator described the funds in AERO's account as "public funds" belonging to NASA.

In total, the two temporary restraining orders froze more than $1.85 million, most of which was in the Merrill Lynch account.

On January 24, 2019, AERO moved to unfreeze its accounts. It argued there was no basis for the freeze.

Cannon submitted a declaration in support of AERO's motion explaining Shaw and Miller were no longer signatories on AERO's accounts.

Cannon also described AERO's relationship with NASA. NASA and AERO enter "cooperative agreements" for AERO to pursue projects. The agreements provide a ceiling of potential funding. Cannon said funds remain in a government account upon which AERO could draw after completing tasks under the agreement. AERO may draw direct costs (the actual costs of performing tasks) and indirect costs (a percentage of direct costs necessary for operating expenses). AERO ran surpluses on some projects and Cannon said AERO owns those funds outright and can spend them for any purpose consistent with its mission.

In their response to the motion to unfreeze, the People said any funds retained by AERO belong to the public and any current funds subject to the temporary restraining order should remain frozen so they will be available for restitution.

The People submitted the February 2019 NASA Office of Investigations report as a supplemental exhibit. The report discussed issues with AERO's expenses, including AERO's claimed expenses being greater than its actual expenses and AERO's potentially unallowable expenses.

On March 1, 2019, the court heard AERO's motion.

At the hearing, AERO denied Shaw or Miller maintained any control over AERO.

The People expressed concern "these funds will be gone if this T-R-O is lifted." The People said AERO's funds constituted third party transfers under section 186.11. They also said Cannon and Abel had unclean hands and were accessories who helped Shaw "maintain the flow of AERO funds." AERO delayed in removing Shaw as a signatory on the Wells Fargo account until September 2018, after the People had filed the criminal complaint. AERO transferred funds from other accounts in

September 2017, which was also after the People filed the initial criminal complaint.  The People believed AERO paid Shaw's attorneys without any legal basis.  Again, the People asserted the money in AERO accounts belonged not to AERO but to the public.

The court denied the motion to unfreeze.  It found the People showed "a connection" between the defendants, Shaw and Miller, and AERO.

AERO appealed.

After AERO filed its opening appellate brief, Shaw and Miller negotiated plea deals.  On January 16, 2020, Miller pleaded guilty to misappropriating public funds (section 424, subd. (a)(1)).  On January 21, 2020, Shaw pleaded guilty to filing a false tax return (Rev. & Tax. Code, § 19705, subd. (a)).  The People agreed to dismiss remaining counts against Shaw and Miller.  Pursuant to the pleas, the court placed the defendants on felony probation for three years each.

As part of their pleas, Miller and Shaw agreed to surrender their interests in the AERO accounts.  AERO was not present at Miller's plea but was present at Shaw's plea.

The parties discussed restitution at the pleas.

At Miller's plea, the prosecution explained, "There will be restitution ordered, your honor; however, restitution in this case will be satisfied through the money that is currently being held under a temporary restraining order that was filed by the People on the AERO Institute business accounts."  The total restitution would be $341,266.  The People explained, "It will be the responsibility of the People and representatives of NASA to obtain those funds once this case is permanently resolved."

As to Miller, the court ordered victim restitution to NASA "payable in the amount and manner as directed by the People

and NASA." The minute order stated, "The restitution is satisfied by money previously seized and will be paid by the People from the AERO Institute business account." Additionally, "The People indicate that upon completion of this case, if any funds remain in the AERO Institute business account they will be distributed to NASA."

At Shaw's plea, the prosecution explained they will seek restitution "from the AERO Institute in an appropriate forum" and they would be seeking $923,468.70. AERO emphasized, "there's been no adjudication" that AERO is obligated to pay restitution. The minute order states the "[p]arties agree that Ms. Shaw does not have to pay direct restitution in this case."

## II

The trial court did not abuse its discretion by refusing to unfreeze AERO's accounts.

We have jurisdiction because the trial court's order denying AERO's motion to unfreeze its accounts was an order refusing to dissolve an injunction. (Code Civ. Proc., § 904.1, subd. (a)(6) [appeal may be taken from an order refusing to dissolve an injunction].)

Refusing to dissolve an injunction rests in the sound discretion of the trial court. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849–850.) We affirm absent an abuse of discretion. (*Ibid.*)

The primary purpose of section 186.11 is to facilitate the payment of restitution by "prevent[ing] dissipation or secreting of assets or property." (§ 186.11, subd. (d)(2); *People v. Semaan* (2007) 42 Cal.4th 79, 86 (*Semaan*).) The section authorizes superior courts to order preliminary relief, including temporary restraining orders, to preserve property or assets for restitution. (§ 186.11, subd. (d)(2).)

8

Assets or property become subject to the court's jurisdiction on a showing the defendant controls them: "any asset or property that is in the control of that person, and any asset or property that has been transferred by that person to a third party, subsequent to the commission of any criminal act alleged . . . may be preserved by the superior court in order to pay restitution and fines" pursuant to this section. (§ 186.11, subd. (d)(1).)

Our job is to determine whether the trial court abused its discretion on March 1, 2019 when it denied AERO's request to dissolve the restraining orders.

The purpose of section 186.11 and the context of this case guide us. The Legislature passed section 186.11 to prevent the "dissipation or secreting" of assets. (*Semaan*, *supra*, 42 Cal.4th at p. 86.) As of March 1, 2019, the People were in the middle of prosecuting a complex criminal case against Miller, Shaw, and Ledford. The parties contested who owned AERO's funds. The prosecution asserted the money in AERO's funds were public funds that belonged in part to a victim, NASA, not to AERO. Before the court issued the orders, Cannon and Abel had shifted money in Aero's accounts: they had moved most of the money to a single Bank of America account and then to a new Merrill Lynch account. In 2018, after the criminal prosecution began but before the court issued the temporary restraining orders, money continued to flow from AERO to entities Shaw and Miller owned. In this context, the court decided to maintain the status quo and to keep AERO's accounts frozen. This did not constitute an abuse of discretion.

AERO's request to dissolve the restraining orders said there was no legal basis to support the orders. That is incorrect.

9

We begin with the first temporary restraining order, the court's freeze of the Bank of America and Wells Fargo accounts. At the time of this August 22, 2018 order, Shaw remained a signatory on a Wells Fargo account and thus she maintained control of the account. As to the Bank of America accounts, Shaw and Miller controlled the accounts as signatories during their alleged criminal acts. AERO changed the signatories but a court could properly find this change in control was a transfer to a third party sufficient to support the restraining order under section 186.11, subdivision (d)(2).

As to the second restraining order of the Merrill Lynch account, the account was created with funds from the Bank of America accounts. AERO moved these funds before the court issued the temporary restraining order on the Bank of America accounts. As we explained, Shaw and Miller had controlled that fund and a court could properly find they had transferred control, which brought the account within section 186.11, subdivision (d)(2).

Furthermore, the prosecution alleged facts sufficient to demonstrate Shaw maintained control over AERO and its accounts even after Cannon and Abel removed her as a signatory. Shaw remained an AERO employee and accepted a salary from AERO at least through 2018. AERO also paid Shaw's attorney from the Merrill Lynch fund. AERO says it is normal for an employer to indemnify an employee and this is not evidence of Shaw's control. The trial court found the People proved Shaw and Miller had a connection to the accounts sufficient to deny the motion to dissolve the restraining order. We can infer the trial court thus made a factual finding Shaw maintained control.

10

In its reply brief on appeal, AERO says Miller and Shaw's settlements should affect our analysis but those occurred after the order on appeal. We cannot say the trial court's ruling was improper because of events that happened months after its ruling. Furthermore, the record contains no evidence the People and Ledford have resolved Ledford's criminal prosecution.

In sum, the trial court did not abuse its discretion by refusing to dissolve the injunction freezing the accounts.

**DISPOSITION**

The judgment is affirmed.

WILEY, J.

We concur:

BIGELOW, P. J.

STRATTON, J.

11