Filed 5/27/21  Buta Buddhism Research Center v. Lai CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BUTA BUDDHISM RESEARCH CENTER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>YEN CHUAN HOU LAI, as Administrator, etc.,<br><br>Defendant and Respondent. | B297255<br><br>(Los Angeles County Super. Ct. Nos. BC548643 & BC551652) |
| BUTA BUDDHISM RESEARCH CENTER,<br><br>Cross-complainant and Appellant,<br><br>v.<br><br>CHI-LI HOU,<br><br>Cross-defendant and Respondent. | |

APPEAL from judgments of the Superior Court of Los Angeles County, David S. Cunningham, Judge.  Affirmed in part and reversed in part.

Hammers and Stephen G. Hammers for Plaintiff and Appellant and Cross-complaint and Appellant.

Cohen Law Firm and Randall A. Cohen for Defendant and Respondent Yen Chuan Hou Lai.

Peter C. Chen and Arnold Freedland for Cross-defendant and Respondent Chi-Li Hou.

\* \* \* \* \* \*

Buta Buddhism Research Center (BBRC) appeals from a final judgment involving two consolidated matters.  One is a quiet title action, originally involving several properties, brought by BBRC against Yen Chuan Hou Lai (Lai), administrator of the estate of Hsin Jen Hou (Hou or decedent).  By the end of the quiet title trial, the only property involved was 14425 Gale Avenue, Hacienda Heights (the Gale property).  At the completion of BBRC's presentation of evidence, the trial court granted a motion for judgment in favor of Hou's estate, ruling that BBRC had failed to meet its burden of proof.  The court quieted title to the Gale property in favor of Hou's estate.

The other matter is a quiet title action brought by BBRC against Chi-Li Hou (Chi-Li)[1] (daughter of the decedent) involving a property on 4101 S. Nogales Street in West Covina (the Nogales property).  Following its consideration of Chi-Li's motion for

---

[1]    Because Chi-Li shares the same surname as the decedent, she will be referred to as Chi-Li for clarity.  No disrespect is intended.

summary adjudication, the trial court found that Chi-Li was and remains the sole owner of the Nogales property, and quieted title in her favor.

BBRC appeals from the final judgment in this consolidated matter. Chi-Li and Hou's estate have separate counsel and have filed separate respondent's briefs concerning the two proceedings. As to the Nogales property, we affirm the order of summary adjudication brought by Chi-Li. As to the Gale property, we reverse the order granting judgment in favor of Hou's estate on the ground that BBRC was deprived of its due process right to a fair hearing.

## FACTUAL BACKGROUND

### Formation of BBRC

Decedent Hou was the founder of BBRC, which was formed in 1998 as a religious nonprofit organization. BBRC is a tax exempt 501(c)(3) corporation focused on teaching the Buddhist faith.[2]

At BBRC's inception Hou identified himself as the sole director of BBRC's board of directors. BBRC alleged that other members acted as directors of BBRC during the relevant time period. Linda Sue Webb testified that between 2008 and 2011, there were five directors on the board of BBRC: herself, Rommie Fred Webb, Kuei Ching Chen Liu (Chen), Jing-Shin Chi, and Lisa Ober. Tsai Lien Liao (Liao), a Buddhist nun and current CEO of BBRC, testified that between 2008 and 2016 there were five

---

[2] Pursuant to title 26 United States Code section 501(c)(3), corporations organized and operated exclusively for religious purposes are exempt from taxation subject to certain restrictions.

3

directors on BBRC's board: Hou, Jing-Shin Chi, Linda Sue Webb, Rommie Fred Webb and Eva Tsai.[3]

Hou died on May 17, 2014. Shortly thereafter Liao called a meeting at which she was appointed CEO of BBRC. The transactions at issue in this lawsuit took place while Hou was alive and acting CEO of BBRC.

**The Nogales Property**

Hou obtained title only in his name as a single man and sole grantee on May 19, 2006, by way of grant deed from Hsiu Chin Tseng. The deed was recorded in the Los Angeles County Recorder's Office on December 22, 2006. The face of the grant deed provides: "This is a bona fide gift and the grantor received nothing in return, R&T 11911."[4]

On November 13, 2008, Hou executed a grant deed transferring the Nogales property to BBRC, which was recorded a few days later in the Los Angeles County Recorder's Office (November 2008 deed). A promissory note was executed the same day by Hou acting on behalf of BBRC, in favor of himself, obligating BBRC to pay him $250,000 on or before December 31, 2009, with interest of 6 percent per annum. The note granted Hou a security interest in the Nogales property in the event BBRC failed to pay the note (Nogales note). The Nogales note further provided that BBRC "waives presentment for payment,

---

[3]    Hou's estate argues that there was insufficient evidence at trial that these individuals were directors because there was no documentary evidence, and no foundation for BBRC's claim that these individuals were elected as directors.

[4]    The parties agree that Hou donated the property adjacent to the Nogales property (4111 S. Nogales), to BBRC by grant deed on June 4, 2008.

notice of non-payment, protest and notice of protest." The note also stated that if BBRC was unable to "get the loan from the Bank within 10 months from today for whatever reason," it would have to transfer the property back to Hou within 90 days.

There was no evidence that BBRC obtained a loan or made any payments on the note to Hou. On February 2, 2010, BBRC deeded the Nogales property back to Hou. The deed indicated, "no consideration name change." The transfer tax was listed as $0, and the document indicated "[t]he grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11923(d)."

BBRC never listed the Nogales property as an asset in any of its tax returns, including the returns reviewed and signed by Liao, as the purported present CEO of BBRC. However, Hou specifically identified the Nogales property as his property for which he reported personal rental income or loss on his tax returns.

On December 2, 2011, Hou transferred the Nogales property to his daughter Chi-Li, by way of grant deed, which was recorded with the Los Angeles County Recorder on December 8, 2011. The grant deed provides, "This is a bonafide gift and the grantor received nothing in return, R & T 11911."

A fraudulent power of attorney purporting to grant Jing Shin Chi the power of attorney-in-fact from Chi-Li, was dated in January 2014 (POA). In February 2014, Jing Shin Chi purported to execute a deed on behalf of Chi-Li, as attorney-in-fact for Chi-Li, transferring the Nogales property from Chi-Li back to Hou. Chi-Li did not learn of the forged January 2014 POA or the February 2014 deed until the commencement of this action. Chi-

Li never executed or approved the documents. Discovery revealed the commission of notary fraud and forgery of both documents. None of the facts regarding the fraud were disputed by BBRC.

**The Gale Property**

Prior to November 2008, Hou owned the Gale property.[5] On November 8, 2008, Hou transferred the Gale property to BBRC via grant deed in a transaction similar to that involving the Nogales property. Lai testified that Hou's intention was for BBRC to receive a loan, so in November 2008 he transferred title of several properties to BBRC so that BBRC could obtain approval for the loan. In exchange for title to the property BBRC provided a promissory note payable to Hou in the amount of $1.16 million with interest at 6 percent per year (Gale note). As with the Nogales note, pursuant to the Gale note BBRC waived all presentment for payment, notice of non-payment, protest and notice of protest. The note provided Hou a security interest in the Gale property and if BBRC was unable to obtain "the loan from the Bank within 8 months for whatever reason, [BBRC] must transfer the property back to [Hou] within 60 [days]." When BBRC did not obtain a loan, BBRC transferred the

---

[5] Linda Sue Webb testified that she was a director of BBRC, that she loaned Hou $800,000 in 2008 to buy the Gale property, and that Hou told her he was buying it for BBRC. Webb testified on cross-examination that she had reached a settlement agreement with BBRC providing that she would receive 60 percent of the proceeds of the Gale property. She had a lawsuit pending against Hou's estate for money she loaned to Hou, but it did not include the money she loaned in connection with the Gale property. Hou never told her that he needed to use the Gale property as collateral for a loan.

6

property back to Hou by grant deed dated February 2, 2010.  The grant deed from BBRC to Hou contained language identical to that found in the Nogales deed concerning the Nogales property: "The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11923(d)."

BBRC's accountant, Tina Chiang, C.P.A. (Chiang), prepared BBRC's taxes between 2007 and 2010, and testified that BBRC had money and assets in 2008 such that it would not need a loan.  Chiang also testified that she had never seen the Gale note; and if Hou had made her aware of the note, she would have referenced it as a liability on the 2008 tax return.  Since Chiang had not seen the note, it was not referenced as a liability in the BBRC 2008 tax return.

## PROCEDURAL HISTORY
### BBRC's complaint and the Hou estate's cross-complaint

On June 13, 2014, BBRC filed a complaint in Los Angeles County Superior Court seeking to quiet title to the Nogales property and the Gale property, among others.  BBRC alleged that it held title to the properties until February 2, 2010, the date on which Hou allegedly secretly transferred the properties back to himself.  BBRC alleged that the transfers were carried out with fraudulent intent to deprive BBRC of its interest in the properties.

Lai, as administrator of the Hou estate, answered on behalf of the Hou estate on August 24, 2016.  As administrator, Lai cross-complained against BBRC and others for quiet title to the Gale property.

7

**Chi-Li's complaint and BBRC's cross-complaint**

On July 15, 2014, Chi-Li filed a complaint to quiet title to the Nogales property, alleging that Jing-Shin Chi wrongfully transferred the property and that she was not the attorney-in-fact for Chi-Li. Chi-Li alleged that the property should revert back to her. BBRC and Hou's estate were defendants in the action. BBRC filed a cross-complaint in the action. Initially, BBRC included allegations of misconduct against Chi-Li. However, following proceedings on Chi-Li's demurrer, BBRC removed all allegations of misconduct against Chi-Li and the sole remaining cause of action in BBRC's cross-complaint against Chi-Li was its competing claim for quiet title to the Nogales property.

**Consolidation**

BBRC filed a motion to consolidate the two actions, which the trial court did on November 5, 2015.

**Chi-Li's summary adjudication motion regarding the Nogales property**

On July 15, 2016, Chi-Li filed a motion for summary adjudication (MSA), seeking two orders: (1) that she holds valid, sole and legal title to the Nogales property; and (2) an order voiding the grant deed of February 21, 2014 and power of attorney dated January 10, 2014. BBRC did not challenge the portion of Chi-Li's motion related to voiding the fraudulent power of attorney and related wrongful and void transfer of title.

The motion was initially scheduled to be heard on September 14, 2016, but was continued several times. Due to Chi-Li's failure to attend a scheduled deposition, the trial court provided a final continuance so that Chi-Li could fly from Taiwan to Los Angeles to attend the deposition. In so doing, the court noted that BBRC had ample notice of the MSA and could have

8

noticed Chi-Li's deposition within the previous two years. The court agreed to accept rough copies of the deposition transcript of Chi-Li.

The hearing on Chi-Li's MSA was held on December 30, 2016. The trial court provided a tentative ruling granting Chi-Li's MSA and quieting title to the Nogales property in favor of Chi-Li.

In the ruling, the trial court noted that it had taken judicial notice of "documents recorded against, or with respect to, the [Nogales] [p]roperty; documents comprising part of the court record in civil actions filed in the superior courts of this state; the tax returns of [d]ecedent and BBRC; and BBRC's statement of information filed with the California Secretary of State." The court found that Chi-Li provided documentary evidence establishing the chain of title and that she carried her legal burden to show that she held valid legal title to the Nogales property. In addition to the documents establishing chain of title, Chi-Li provided other documentary evidence supporting her position, including BBRC's tax returns and the decedent's personal tax returns. BBRC failed to raise a triable issue of material fact with respect to this issue.

BBRC submitted on the tentative without asserting any legal objections, evidentiary objections, or arguments. The tentative ruling became final. BBRC filed a motion for new trial, which was denied.

**Bench trial concerning the Gale property**

The bench trial on the Gale property commenced on November 6, 2017. The only parties to attend trial were BBRC and Lai, as administrator of the estate of Hou. On the first day of trial, BBRC and Lai were sent to meet and reach stipulations as

9

to exhibits and to provide the court with a time estimate. BBRC's counsel estimated 16 hours for his case. The court responded, "I don't have 16 hours to give you. To tell you up front, I'm not doing that. I'm not giving you 16 hours. I'm just not. Okay?" The court later stated it would give each side five hours, "and you [can] allocate it however you want." BBRC's counsel advised that he would need at least 10 hours, because the matter involved property valued at more than $2 million and his witnesses needed translators.[6] The court required counsel to make an offer of proof to exceed the allotted five hours of trial time. Counsel began to make an offer of proof, but the court did not permit its completion. Despite counsel's protests, the court did not budge from its five-hour time limit.

BBRC's counsel objected on the record to the court's five-hour time limit, stating, "with all due respect, we respectfully object that we do need more than five hours because of our—" The court interrupted, stating: "I'm not just accepting your representation, so the answer to that is no. I'd ask you guys to meet and confer and see what you come up in terms of streamlining it. And if you can't do that—" BBRC's counsel responded, "We did streamline. But counsel and I agree that we need at least—" The court then repeated that it needed an offer of proof. Counsel attempted to make such an offer, stating: "I understand. We reduced our trial witnesses to five witnesses, and two—all our five witnesses, two of them are parties. And the offer of proof is—" The court then advised that the offer of proof needed to be in writing. Counsel for BBRC inquired, "Your

---

[6]     The trial initially also involved a property the parties referred to as the Foxglove property, but the Foxglove property is not at issue in this appeal.

Honor, can I at least give you an offer of proof, so maybe—at least give me seven, eight hours of time so maybe I can allocate—" The court interrupted counsel, but suggested that the matter would be reviewed again after the break.  Counsel was advised to begin his case.

Following his opening statement, counsel for BBRC asked the court if it would consider extending the five-hour time allotment due to counsel's inexperience.  The court responded that it would not.

Counsel for BBRC called defendant Lai as his first witness. Next counsel called Chiang, the CPA who prepared taxes for BBRC between 2007 and 2010.  Counsel then called Chen, who needed an interpreter.  Lai's counsel objected to the witness stating that the witness was never identified in discovery.  The court allowed the testimony subject to a motion to strike.  Chen testified that she had been on the board of BBRC and secretary of BBRC since 1999.  On the motion of Lai's counsel, Chen's testimony was stricken on the ground that her name had never been provided and no corporate documents had been produced. The first day of trial ended, and the court advised counsel that BBRC had two and a half hours of trial time remaining.

On the second day of trial, BBRC called Linda Sue Webb, who needed an interpreter.  Webb testified that she had been a director of BBRC since about 2000 and that from 2008 to 2011 there were four other members of the board.  She further testified that she loaned $800,000 to Hou in 2008 to buy the Gale property and that he told her he was buying it for BBRC.  Webb testified on cross-examination that she reached a settlement agreement with BBRC that she would receive 60 percent of the proceeds of the sale of the Gale and Foxglove properties.  After Webb's

11

testimony, the court advised BBRC's attorney that he had one hour and 20 minutes remaining and informed him that he had to "figure out how you want to allocate it. If you want to reserve some time for rebuttal, you need to do so." Counsel advised the court that he desired to have 30 minutes for rebuttal.

BBRC's last witness was Liao, who testified through an interpreter, that she was CEO of BBRC by way of an "urgent meeting." Due to the time taken by Liao's testimony, counsel was not able to finish questioning Liao.

When counsel hit the four-hour, 30-minute mark, he was given a choice: use his last 30 minutes to call another witness or abandon testimony and reserve the remaining time for rebuttal. Counsel elected the latter.

**Estate of Hou's motion for judgment**

Prior to presenting the estate's case in defense, the estate made a motion for judgment. The court inquired, "A motion for directed verdict?" The estate's counsel responded, "Well, a directed verdict is in a jury case, but under 581c in a court trial."[7]

After entertaining argument from both sides following the estate's motion, the court indicated:

> "I'm prepared to enforce the title presumption unless you—the problem is, if it was just more likely than not, you might be there; but this is not clear and convincing. And, therefore, I would respect the title presumptions of 622 of the Evidence Code, and I will find you haven't presented clear and convincing

---

[7] The estate's counsel argues on appeal that the motion was not made under Code of Civil Procedure section 581c. The estate acknowledges that counsel may have cited the wrong statute at trial, but argues that the motion was for judgment under Code of Civil Procedure section 631.8 and was evaluated as such.

12

evidence to rebut the title presumption. So that's where I am (inaudible)—that would be the court's ruling."

**Judgment**

On March 29, 2019, the court entered its judgment after motion for summary adjudication and trial. The judgment quieted title in the Nogales property in favor of Chi-Li, and quieted title to the Gale property in the estate of Hou.

On April 25, 2019, BBRC filed its notice of appeal from the judgment.

## DISCUSSION

### I.    MSA as to the Nogales Property

BBRC argues that the trial court erred in granting summary adjudication in favor of Chi-Li as to the Nogales property. First, BBRC argues that the trial court improperly applied the clear and convincing evidence standard from Evidence Code section 662 on the motion for summary adjudication. BBRC argues that its challenges to legal title were based on fraud, thus the clear and convincing standard was not appropriate. (Citing *People v. Semaan* (2007) 42 Cal.4th 79, 88.) Because it was a summary adjudication motion, BBRC argues, the standard was whether reasonable inferences established a triable issue of fact. BBRC argues that the evidence before the court provided a reasonable inference that Hou committed a wrongful, self-dealing transaction. Further, BBRC argues that the trial court should have applied Corporations Code section 9243 to void the self-dealing transaction carried out by Hou.

#### A.    *Standard of review*

We review an order granting summary adjudication de novo. (*Aguilar v.* Atlantic *Richfield Co.* (2001) 25 Cal.4th 826,

13

860.)  We must independently examine the record to determine whether a triable issue of fact exists.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)  The trial court's stated reasons for its decision granting summary adjudication are not binding, as we review the court's ruling, not its rationale.  (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)  In determining whether a triable issue was raised, we must disregard any evidence that the trial court properly excluded and must consider any evidence to which no objection, or an unsound objection, was made.  (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 957.)  We must consider all admitted evidence in the light most favorable to the party opposing the summary adjudication motion.  (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 588.)

Our role is to determine "'"whether issues of fact exist,"'" not to decide the merits of the issues themselves.  (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228.)

### B.  *The trial court's ruling on Chi-Li's MSA*

Chi-Li sought summary adjudication on her first and third causes of action for quiet title and declaratory relief, seeking an order that she holds valid, sole legal title to the Nogales property.  In deciding the motion, the trial court granted Chi-Li's request for judicial notice of "documents recorded against, or with respect to, the [Nogales] [p]roperty; documents comprising part of the court record in civil actions filed in the superior courts of this state; the tax returns of [d]ecedent and BBRC; and BBRC's statement of information filed with the Secretary of State."

To support the motion, Chi-Li submitted the recorded deed documents evidencing the chain of title.  The documents showed the decedent's acquisition of the Nogales property, the

14

November 2008 grant deed conveying title to BBRC in connection with the loan transaction; the promissory note executed on the same day; and the February 2010 deed back to the decedent from BBRC.  On December 2, 2011, the decedent executed a grant deed transferring the property to Chi-Li.  Chi-Li carried her burden to show that she held record title to the property by virtue of the December 2, 2011 grant deed executed by her father.

The trial court found that the December 2, 2011 deed constituted prima facie evidence that the property was conveyed by decedent to Chi-Li.  Pursuant to Evidence Code section 662, the trial court found that Chi-Li is therefore presumed to be the full beneficial owner of the property, a presumption which may be rebutted only by clear and convincing proof.  In addition to the December 2011 grant deed, other documents supported Chi-Li's position that she was the rightful owner of the Nogales property.  For example, BBRC's tax returns for 2008 through 2010 did not show any loan payments to decedent.  Additionally, BBRC did not list the Nogales property on its tax returns.  Accordingly, the burden shifted to BBRC to show a triable issue of material fact as to whether Chi-Li held beneficial title.

The trial court found that BBRC failed to carry its burden of showing a triable issue of material fact.  Although BBRC challenged Chi-Li's title on various grounds, it did not present evidence to support its contentions.  BBRC argued that the February 2010 grant from BBRC to decedent was fraudulent or may have resulted from a breach of fiduciary duty on the part of the decedent towards BBRC.  However, BBRC presented no evidence to support this theory.  Similarly, BBRC challenged Chi-Li's title on the ground that she paid no consideration for the title.  However, the December 2011 grant deed expressly stated

15

that the transfer was a gift. BBRC presented no evidence to undermine the close familial relationship between the grantor and grantee. Finally, BBRC argued that Chi-Li was a "strawman" and decedent did not intend to permanently transfer the property to her. The trial court noted that this argument was "moot" due to the fact that the probate court approved a settlement agreement confirming that the Nogales property belonged to Chi-Li. In addition, BBRC filed a creditor's claim in the probate proceedings, which could be understood as a tacit admission that BBRC does not have a valid claim to title. The trial court noted that while BBRC's theories had changed, it did not present evidence supporting its contentions or raise a triable issue as to the validity of the December 2, 2011 grant deed.

### C. *The clear and convincing standard*

Evidence Code section 662 provides that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." Evidence Code section 662 is applicable where there is no dispute as to legal title, but there is a question as to equitable title. (*Murray v. Murray* (1994) 26 Cal.App.4th 1062, 1067-1068 (*Murray*); see *Toney v. Nolder* (1985) 173 Cal.App.3d 791, 793; *Tannehill v. Finch* (1986) 188 Cal.App.3d 224, 227-228.) Throughout these proceedings, BBRC has consistently argued that it held equitable rights to the property, not legal title.

As the Supreme Court has explained, Evidence Code section 662 serves to codify the common law rule that "oral trusts in derogation of title are disfavored and must be proved by clear and convincing evidence." (*People v. Semaan, supra*, 42 Cal.4th at p. 88.) "'Allegations that deeds absolute are actually

16

mortgages, that conveyances are subject to a trust, and that legal title does not represent beneficial ownership have . . . been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title.'" (*Ibid.*)  The high court clarified that Evidence Code section 662 does not apply "when title itself is challenged as not genuine." (*Semaan*, at p. 88.)  Otherwise, the section would "encourage fraud by permitting a dishonest person, simply by creating false documents of title, to shift to an innocent owner the burden of proving ownership by clear and convincing evidence." (*Id.* at p. 89.)

BBRC argues that Evidence Code section 662 does not apply in this matter.  In support of this argument, BBRC cites *Murray, supra,* 26 Cal.App.4th 1062.  In *Murray*, the plaintiff claimed the title was void.  She claimed that her signature on the deed transferring the property to her stepfather's new wife had been forged.  (*Id.* at p. 1064.)  Under those circumstances, the trial court did not err in instructing the jury that the plaintiff had to prove her case by a preponderance of the evidence.  (*Id.* at p. 1068.)  The presumption found in Evidence Code section 662 did not apply because the plaintiff was asserting that the forged title was void, not that she had a beneficial interest in the property. (*Murray*, at pp. 1067-1068.)  In other words, the *Murray* plaintiff was challenging legal title, not claiming equitable rights to title.

Here, in contrast to the situation in *Murray*, BBRC is not claiming that Hou or Chi-Li created false or fraudulent documents.  Instead, BBRC's various theories were grounded in equity.  For example, in its June 13, 2014 complaint, which sought, in part, to quiet title to the Nogales property, BBRC

17

alleged only that it "holds equitable ownership interests in the property." While BBRC alleged that Hou engaged in "'self-dealing'" and acted with "fraudulent intent" in transferring the Nogales property back to himself and then to Chi-Li, it did not argue that the documents themselves were false or fraudulent. BBRC included a cause of action for unjust enrichment and sought monetary damages based on its purported interest in the various properties, including the Nogales property. BBRC did not pray for an order striking or voiding the grant deeds at issue. In its first amended cross-complaint, filed November 13, 2015, BBRC alleges that the transfers of the deeds were done "with fraudulent intent to defraud BBRC." As a result, BBRC alleged that it held "equitable ownership interests" in the property. BBRC sought damages, imposition of a constructive trust, and restitution of funds. Again, BBRC did not seek to strike or void the grant deeds at issue. Thus, the presumption found in Evidence Code section 662 was applicable to Chi-Li's title.

Further, even if BBRC did allege that title to the Nogales property was void, the trial court's reference to the clear and convincing standard would constitute harmless error under the circumstances. BBRC's claims to the Nogales property were determined on a motion for summary adjudication. As such, the court was not imposing a standard of proof but seeking to determine whether BBRC had presented any evidence that established a triable issue of fact. While the court noted that Chi-Li's ownership to the legal title of the property created a presumption that she is also the owner of full beneficial title and that such presumption "may be rebutted only b[y] clear and convincing proof," the trial court did not rely on that standard in deciding the motion. Instead, the trial court found that BBRC

18

failed to present any evidence at all to support its various theories. For example, the trial court stated, "BBRC does not present any evidence of fraud or other tortious conduct to rebut the presumption or raise a triable issue of material fact." In addition, the trial court pointed out that BBRC did not present evidence to dispute Chi-Li's position that the property was a gift to her.[8] Further, in spite of its various theories, BBRC did not "present evidence to support [its] contentions or raise a triable issue about the validity of the December 2, 2011 grant deed."[9]

---

[8] BBRC asserts on appeal that there was an inference that the transfer was not a gift and that, in fact, Chi-Li provided financial and personal support to her father in exchange for the property. BBRC asserts that this contradiction creates a triable issue as to whether the transaction was legitimate. As BBRC sets forth no legal authority for this argument, we find it unpersuasive. That a daughter would provide financial and personal support to her father, and a father would gift his daughter a property, does not necessarily raise any question of impropriety.

[9] BBRC asserts on appeal that the settlement agreement approved by the probate court did not confirm that the Nogales property belonged to Chi-Li and merely acknowledged that BBRC was asserting claims to the property. This statement appears to be incorrect based on the language of the settlement agreement, which was before the trial court in connection with the MSA: "The Parties acknowledge, confirm, and agree that Chi Li Hou is the rightful sole owner and holder of fee simple title to the real properties commonly known as the [Nogales property . . . ]. The Chi Li Properties do not belong to and are not part of the Estate." While the settlement agreement acknowledged that BBRC was asserting claims to the Chi Li properties, it also acknowledged and confirmed "Chi Li Hou's rights, title, and interest to [the

Under the circumstances, it is irrelevant whether the trial court should have imposed a clear and convincing evidence, or a preponderance of the evidence, standard. BBRC presented no evidence in support of its theories and did not create a triable issue of fact as to its alleged interest in the title of the Nogales property.

### D.    *Corporations Code section 9243*

BBRC cites Corporations Code section 9243, which describes a "self-dealing transaction" as "a transaction to which the corporation is a party and in which one or more of its directors has a material financial interest" and which does not meet the requirements of certain subsections of the statute. The statute provides several factual scenarios under which a transaction is excluded from being described as a self-dealing transaction and also provides numerous factual scenarios under which the statutory remedies are not available. BBRC argues that this provision of the Corporations Code provides BBRC with the right to obtain a court order of void title as to the Nogales property.

BBRC fails to provide a citation to the record showing that it raised this statute or this argument below. In reviewing a summary adjudication motion, appellate courts will generally not consider an argument raised in the appeal if it was not raised in the trial court. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335.) Because the statute was not raised below, BBRC failed

---

Nogales property] in any action, claim, or proceeding brought currently or [that] may be brought in the future by Liao, BBRC, Chi Li Hou or any other parties." The language of the settlement agreement does not leave room for BBRC to argue that the trial court misinterpreted this document.

20

to set forth the specific application of the statute under the factual circumstances of this case. As set forth above, the statute is complex and contains various provisions under which a transaction would not qualify as "self-dealing," and other provisions which specify that a remedy shall not be granted under certain circumstances. As Chi-Li points out, the language of subdivisions (b) and (d) of Corporations Code section 9243 provide multiple scenarios where a person may hold interest on both sides of a transaction. These precise facts were never developed below, and we decline to consider the application of the relevant facts of the Nogales transactions to Corporations Code section 9243 in the first instance on appeal. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 ["'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'"].)

BBRC has thus forfeited its argument regarding Corporations Code section 9243 by failing to raise it below. Further, BBRC provides no authority or reasoned argument suggesting that the various transfers of title to the Nogales property were in violation of Corporations Code section 9243. Therefore, we decline to address this issue further. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["'"When an appellant raises an issue 'but fails to support it with reasoned argument and citations to authority, we treat the point as waived.'"'"].)

21

### E. *Conclusion*

The trial court's decision granting summary adjudication in favor of Chi-Li as to the Nogales property is affirmed.[10]

## II. The Gale property

BBRC appeals from the grant of nonsuit under Code of Civil Procedure section 581c, or motion for judgment under Code of Civil Procedure section 631.8, in the trial of the Gale property on several grounds. First, BBRC argues that it was denied due process of law because the trial court placed an arbitrary five-hour limit on its trial time. In addition, BBRC argues that even considering the limited evidence that it was permitted to present, the trial court erred in granting the estate's motion for judgment. BBRC argues that the evidence demonstrated multiple wrongful transactions, that the trial court erred in applying the clear and convincing standard of evidence, and that the court failed to properly consider Corporations Code section 9243.

---

[10] Chi-Li has requested that we take judicial notice of the records of the San Bernardino case: *Buta Buddhism Research Center v. Chi* (Super. Ct. San Bernardino County, 2018, No. CIVDS1409754) (San Bernardino case). Chi-Li argues that her motion for summary adjudication should be affirmed on the ground of collateral estoppel due to identical litigation involving BBRC and Chi-Li pertaining to the property at issue in the San Bernardino case. Chi-Li argues that the judicial determination in the related San Bernardino case on similar facts and law applies to bar BBRC's case against Chi-Li in this matter. Because we have determined that the summary adjudication in this matter should be affirmed based on the record before the trial court, we decline to reach the issue of whether collateral estoppel applies under the circumstances. We therefore deny Chi-Li's request for judicial notice.

We conclude that BBRC was denied its due process right to a fair hearing, and will reverse the matter involving the Gale property for a new trial. Therefore, we need not reach the merits of BBRC's other claims on appeal.

### A.   *Due process principles*

The 14th Amendment to the United States Constitution provides that no state may deprive a person of life, liberty, or property without due process of law. (U.S. Const., 14th Amend.)[11] "'The term "due process of law" asserts a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice.'" (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 290 (*Carlsson*).) "'"The trial of a case should not only be fair in fact, but it should also appear to be fair." [Citations.] A prime corollary of the foregoing rule is that "A trial judge should not prejudge the issues but should keep an open mind until all the evidence is presented to him."'" (*Id.* at pp. 290-291.)

The trial court has the power to "rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact." (*Carlsson, supra,* 163 Cal.App.4th at p. 291.) However, a trial court may not summarily terminate a trial before a party has finished giving its presentation. (*Ibid.*) "'Denying a party the right to testify or to offer evidence is reversible per se.'" (*Ibid.*) A trial court's efforts

---

[11]    The California Constitution similarly provides that persons may not be deprived of life, liberty, or property without due process of law. (Cal. Const., art. 1, § 15.)

23

to expedite the handling of matters before him "'"should never be directed in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination."'" (*Ibid.*)  A trial court may not run a trial "on a stopwatch, curtailing the parties' right to present evidence on all material disputed issues." (*Id.* at p. 292.)

**B.**     ***BBRC was deprived of its due process right to present evidence***

The trial court in this matter improperly conducted the trial on a stopwatch and curtailed BBRC's opportunity to present evidence.

From the beginning, the trial court showed impatience with BBRC's counsel, refusing to consider BBRC's request for 16 hours of trial time.  The court began by asking the parties to give an estimate of time needed for trial, "because I've got not one, but three trials waiting for available time."  BBRC's counsel, explained to the trial court, "the plaintiff has a heavy burden so we at least need 16 hours."  The trial court responded, "I don't have 16 hours to give you.  To tell you up front, I'm not doing that.  I'm not giving you 16 hours.  I'm just not.  Okay?"

The court offered, ". . . I'm just going to give you each five hours, and you allocate it however you want.  That's what I'm going to do—I see you shaking your head, but that's what I'm going to do."  When the court again stated its position that the trial could be "resolved in ten hours or less," counsel explained, "Your Honor, the reason why I need more time is because my witness—especially my witnesses also need interpreter, and I have interpreter stand by you."

24

The court insisted that counsel give an offer of proof as to what his witnesses would say.  When he attempted to do so, the court interrupted him:

"Mr. Hsu: My offer of proof is we have is [*sic*] C.P.A. to testify to the 2008 tax return to show that there's a fraudulent conveyance because at that time even though there is a—

"The court:  No, he can give an opinion. C.P.A.'s can give an opinion in about an hour—

"Mr. Hsu:  It's not opinion.  The C.P.A. is the custodian of the records.  She's going to have to testify that throughout her examination of the document based on 2008 tax return.  And she—

"The court:  You have to do a full offer of proof on that then.  Okay?

"Mr. Hsu:  Yes.  So it's going to take more time. It's not just going to—

"The court:  I'm not certain of that.  I don't agree with you on that.  Okay?  If the offer is, the C.P.A. is going to opine to, what, cash flow?

"Mr. Hsu:  Not the cash flow—

"The court:  Or opine for what?

"Mr. Hsu:  It's basically the tax return itself. The officer has never borrowed the money indicating—

"The court:  Are they going to do a forensic accounting?

"Mr. Hsu:  Not a forensic accounting.  It's a check on the checkbox.

"The court: What's their opinion going to consist of that is going to take more than an hour—

25

"Mr. Hsu: Their opinion basically is going to be showing that the tax return is they will never show that the corporation, BBRC, borrowed any money from the decedent.

"The court: All right. Right now you got five hours, so you just need to think about that. We'll see if you need more time, but that's where I am. Okay?

"Mr. Hsu: Okay."

The court proceeded to denigrate and interrupt counsel for BBRC when he chose to begin his case with his opponent's witness, stating:

"The court: You're going to start with 776?[12]

"Mr. Hsu: Yes, Your Honor.

"The court: What's the offer of proof on 776?

"Mr. Hsu: Let me go over the . . .

"The court: I love that lawyers always like to start with cross-examination. I mean, it can work for a judge, but I'm always clueless as to why we always start with the other side's lawyer—side, as if that's going to prove their case. To me, that's usually a bad sign. Your case should stand on its own merit, independent of calling the other side to cross-examination.

"Mr. Hsu: Yes. But because—

"The court: Just my observation.

---

[12]     The court was referring to Evidence Code section 776, which permits a party to the record of any civil action to be called "and examined as if under cross-examination by any adverse party at any time during the presentation of evidence by the party calling the witness."

26

"Mr. Hsu:  —the question originate with the decedent's—

"The court:  We'll see.  To me, it's like that tactic, from what I see, is if the plaintiff starts the case by cross-examining the other side, usually results in a lot of waste of time.  You have to prove your case independent of the other side, typically.  All right?

"Mr. Hsu:  Okay.

"The court:  All right.  But we can do it however you wish, but I'm just—I want us to be efficient.  We're in a point now—with these trials and these cases, we have to be efficient."

Shortly thereafter, Mr. Hsu tried again to secure more than five hours to present his case.  He stated, "Your Honor, with all due respect, we respectfully object that we do need more than five hours because of our—" The court interrupted, stating: "I need an offer of proof.  I'm not just accepting your representation, so the answer to that is no.  I'd ask you guys to meet and confer and see what you come up in terms of streamlining it.  And if you can't do that—" Mr. Hsu stated, "We did streamline.  But counsel and I agree that we need at least—"  The court again insisted on an offer of proof, but simultaneously refused to budge from its five-hour time allotment:

"The court: Then you're going to have to make an offer of proof as to why.  I mean, otherwise, I'm just going to start in with the openings.  Tell me what you have to prove.  I'm giving you five hours each.  And depending upon where we are, I may extend it; I don't know, but that's where I am.  Okay?  Because I don't want duplication.  I do not want duplication."

Mr. Hsu expressed his understanding and stated that he had "reduced [his] trial witnesses to five witnesses." He added, "And the offer of proof is—" and was again interrupted by the court before he could make his offer. The court, for the first time, insisted that the offer of proof be in writing.

The estate's counsel indicated that he needed only two to three hours, to which the court responded, "Right. Yes. You've got five hours." The court then stated, "That's all I can give you."

Counsel asked again, "Your Honor, can I at least give you an offer of proof, so maybe—at least give me seven, eight hours of time so maybe I can allocate—" The court interrupted, "Why don't you do this? Start with your opening. I'll give you 30 minutes to give me your opening, tell me what you're going to prove, and I'll revisit this at 1:30."

After opening statement, the court stated, "All right. It does appear to me that that can be done in five hours each. I can't imagine, given the documents and the remedy that you're seeking, that this is going to take three or four days." Counsel again asked for more time, stating, "Your Honor, can offer maybe perhaps experience of counsel maybe a thing to consider to increase the time for plaintiff?" The court responded: "No. I'm not trying to be mean—"

The court concluded, "Based on your opening, I think this appears to be straightforward, and based on the exhibits, this is more document-related. So you'll have two and a half hours this afternoon to present your case and two and a half hours tomorrow."

As counsel began his case-in-chief, the court stated, "Mr. Hsu, do you want to begin? Call your first witness, and you'll have a total of five hours starting now."

28

The court continued to run the trial on a stopwatch, warning counsel of his time limits frequently. The court formally stopped the clock for breaks, and indicated how much time was left. When counsel asked to have a moment to confer with his client, the court stated, "Your time is running. Go ahead."

As counsel neared the end of his five hours, the court inquired, "Are you going to reserve any time for rebuttal? Because you do have a total time of five hours, and right now you're at three hours and 45 minutes." Mr. Hsu indicated that he would like to reserve 30 minutes for rebuttal.

Counsel for Hou's estate indicated that he did not need his full five hours of allotted time. There was no discussion of allowing more time for BBRC's counsel despite the brief defense case.

The court warned counsel when he had 35 minutes left in his case, stating: "You've got about 35 minutes left in your case in chief including rebuttal. I would suggest you use it wisely, Mr. Hsu." Counsel immediately rested his case, reserving 30 minutes for rebuttal. BBRC asserts that Mr. Hsu was not able to finish his direct examination of his last witness.

Hou's estate's counsel then made a motion for judgment, which the trial court granted on the ground that BBRC failed to meet its burden of proof, particularly given the presumption under Evidence Code section 662. The court stated:

> "I mean, so without more, there's smoke, but I don't see flames or anything hot. So, I mean, you've got to have a little bit more than the smoke in this circumstance because of the presumption. If you didn't have the title presumption, I think you'd be getting there. But with the title presumption, I don't think it's clear, and it certainly isn't convincing to me."

29

The court continued:

". . . I think the reason—there is a reason why you have to have more evidence than just, 'Hey, judge, it's circumstantial'—because you're really presenting indirect evidence that I draw a circumstantial conclusion. And my reaction is BBRC would have to produce minutes, documents, a loan agreement, escrow instructions, that would get me there. And in the absence of that, you just haven't met your burden of proof. So it's not that I don't think it didn't happen the way you're saying, I just don't think you proved it."

The above quoted portions of the record show a violation of due process. BBRC was not permitted a fair opportunity to present its evidence. "[A] party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357.) The dialogue quoted above suggests that the trial court had prejudged the issues, and did not maintain an ""open mind until all the evidence [was] presented to him."" (*Carlsson, supra*, 163 Cal.App.4th at p. 291.) Instead of using its discretionary power to exclude certain irrelevant or cumulative evidence, the court simply denied BBRC the right to make its case, arbitrarily limiting BBRC's access to court time and forcing BBRC to cut its witness list dramatically. (*Ibid.*) In addition, the court kept a strict clock running, warning counsel periodically to use his remaining time wisely. "The trial court essentially ran the trial on a stopwatch, curtailing the parties' right to present evidence on all material disputed issues." (*Id.* at p. 292.) The record shows BBRC's counsel repeatedly asking the court for an opportunity to present more evidence, and repeatedly being

denied this opportunity. This amounted to a denial of fundamental fairness.

As further evidence that the trial court had prejudged the issues, the court then granted a motion for judgment in favor of the defense on the ground that BBRC had not proved its case. To so significantly curtail BBRC's presentation of evidence, then assert that BBRC had failed to prove its case, constitutes fundamental unfairness in violation of due process.

## C.     *Automatic reversal is appropriate*

"[C]ourts have consistently applied the rule of automatic reversal where a party is prevented from having his or her full day in court." (*Carlsson, supra,* 163 Cal.App.4th at p. 293.) "The failure to accord a party litigant his constitutional right to due process is reversible per se, and not subject to the harmless error doctrine." (*Ibid.*) When a trial court arbitrarily cuts off the presentation of evidence, the error infects "the integrity of the trial" and requires "reversal without regard to an assessment of actual prejudice." (*Id.* at p. 294.)

Hou's estate relies on *California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12 (*Crane*) for the proposition that BBRC is required to show a miscarriage of justice before reversal in this matter. *Crane* is distinguishable. It involved a trial for antitrust and unfair competition violations. Although the appellants had provided a four- to six-week time estimate in their pretrial brief, the trial court provided the parties with a "'target'" of "'nine to ten days'" given the narrowing of issues that the parties had accomplished before trial. (*Id.* at p. 17.) Appellants proceeded at a slow pace thoughout trial and were admonished several times by the trial judge. (*Id.* at pp. 17-18.) Although the parties agreed

31

that respondents would get to start on the morning of the eighth day of trial, appellants continued with their case-in-chief until the afternoon of the ninth day of trial.  (*Id.* at p. 18.)  "The court told the parties the case had to go to the jury the next day or they would lose a juror . . . ."  (*Ibid.*)  Respondents complained that appellants were taking longer to cross-examine respondents' witnesses than appellants took on direct examination.  (*Ibid.*)  When additional juror scheduling problems came to light, the parties agreed to limit their closing arguments to one hour each.  (*Ibid.*)  However, appellants protested that they had not been permitted to rebut respondents' evidence.  (*Ibid.*)  The case was argued to the jury on the afternoon of the 11th day of trial and the jury began its deliberations on the 12th day of trial.  (*Id.* at p. 19.)

Under the circumstances present in the *Crane* case, the trial court provided reasonable limits on the length of the trial.  The *Crane* court explained that trial judges must do their best to assure that all court cases assigned to them are "fairly and efficiently" heard and decided.  (*Crane, supra,* 226 Cal.App.4th at p. 19.)  Further, parties often overestimate or underestimate a trial's potential length, so a trial judge must do its best to predict the length of trial given these ambiguities.  (*Id.* at p. 20.)  Significantly, in the *Crane* case, the parties did not object to the trial court's 10-day estimate.  "While appellants stated the timeframe was 'optimistic,' they did not object or provide any rationale why the trial could not be completed within that time period."  (*Id.* at p. 23.)  Further, the record suggested that appellants were deliberately mismanaging their case-in-chief, taking longer with each witness than they initially predicted.  (*Id.* at pp. 23-24.)  Under those circumstances, "the trial court did

32

not abuse its discretion in holding appellants to the trial schedule." (*Id.* at p. 24.)

The matter before us is different. Here, BBRC repeatedly objected to the five-hour time limit imposed by the court. BBRC significantly cut its witness list, and was repeatedly cut off by the trial court when it made an effort to present an offer of proof as to why it needed more time. While the *Crane* case provides an example of the reasonable use of the court's discretionary power to control the proceedings, this case provides an example of fundamental unfairness.

In addition, Hou's estate cannot complain that BBRC has not shown prejudice because BBRC was not able to present much of the evidence it sought to present. For example, in the final argument regarding the estate's motion for judgment, BBRC complained that it was not able to explore the possibility of improper self-dealing or breach of fiduciary duty. In rejecting the argument, the court relied on BBRC's failure to present sufficient evidence:

> "I'm not sure that you've established self-dealing. I'm not sure that you've established any clear and convincing evidence that you can rebut the title. It seems like he was in his authority to do this. Was it self-dealing? Maybe. I mean, if he's still liable to Ms. Webb to pay for the property because she loaned him the money, that needs to be addressed. But does that invalidate the title? Not on this record."

It is fundamentally unfair to suggest that BBRC did not establish a claim when it was not permitted to present all of its evidence.

33

**D.** *Conclusion*

BBRC was prevented from having its full and fair day in court. Automatic reversal is appropriate. (*Carlsson, supra*, 163 Cal.App.4th at p. 293.)[13]

## DISPOSITION

The judgment is affirmed in part and reversed in part. The order granting Chi-Li's motion for summary adjudication is affirmed. The order granting the Estate of Hou's motion for judgment as to the Gale property is reversed and the matter is remanded for a new trial. Chi-Li is awarded her costs of appeal. All other parties to bear their own costs.

_____, J.
CHAVEZ

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

---

[13] Because we reverse and remand this matter for a new trial on due process grounds, we need not address the other issues BBRC has raised regarding the ruling on the Gale property: (1) that nonsuit was improper considering the evidence admitted during BBRC's case-in-chief, (2) that the trial court applied an improper evidentiary standard under Evidence Code section 662, and (3) that the trial court erred in failing to consider Corporations Code section 9243.